### W. A. CRISP v. W. H. BIGGS.

(Filed 11 September, 1918.)

**Estates—Rule in Shelley's Case—"Nearest Heirs"—Fee Simple.**

An estate to M., "in fee simple, all the days of his life, then it shall descend to his nearest heirs," vests in M. a fee simple title, under the rule in *Shelley's Case;* the words, "nearest heirs," meaning simply the word "heirs." The history and meaning of the rule in *Shelley's Case,* and its value at the present day, discussed by CLARK, C. J.

APPEAL from *Kerr, J.,* at June Term, 1918, of MARTIN, on a controversy without action, under Revisal, 803.

*Critcher & Critcher for plaintiff.*
*Wheeler Martin for defendant.*

CLARK, C. J. Jesse Mizelle devised the tract of land in question to his son, Hardy Mizelle, "to have and to hold in fee simple all the days of his life, then it shall descend to his nearest heirs." The plaintiff was the grantee of Hardy Mizelle, and, having contracted to convey the same to the defendant, tendered him a deed. The latter refused to accept, upon the ground that the plaintiff could not convey a fee-simple title. This raises the simple question whether the devise to Hardy Mizelle was in fee simple.

The rule in *Shelley's Case* was first stated, 1 Coke, 104, in 1581, and is as follows: "When an ancestor, by any gift or conveyance, taketh an

estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs in fee or in tail, the word *heirs* is a word of limitation of the estate, and not a word of purchase." Applying this rule, there can be no controversy that Hardy Mizelle, under the devise in question, held the land in fee simple.

The rule in *Shelley's Case* is an exception to the general rule that a will must be construed according to the evident intent of the devisor, and substitutes for it an arbitrary rule of law which makes that a devise in fee simple which was evidently intended to be for life only, with remainder over.

In *Cohoon v. Upton,* 174 N. C., 90, it is stated that the rule was created to preserve to the feudal lord certain fees and perquisites which accrued to him when land passed to the heir by inheritance, but of which the lord would be deprived if the land passed from a life tenant to his son as purchaser. In the concurring opinion in that case (p. 91) the history of the original decision was given and the motive for it, which was to preserve the feudal lords from the loss of the wardship of minor heirs and other profits accruing to the lord upon the descent of lands. The rule was first reported, 1 Coke's Reports, 93-B, and has been rigorously adhered to, except in *Perrin v. Blake,* in the King's Bench, which was reversed in the Exchequer Chamber, 4 Burr., 2579; Bl. Rep., 672; Dougl., 329. The rule now serves an excellent, but an entirely different, purpose in this State, in that it prevents the tying-up of real estate by making possible its transfer one generation earlier, and also subjecting it to the payment of the debts of the first taker. It is doubtless for this reason that the rule has never been repealed in North Carolina.

It may be of some interest to the profession to quote from Lord Campbell's Life of Sir Edward Coke the following professional statement of the manner in which the rule was originally laid down: "Edward Shelley, being seized in tail general, had two sons, Henry and Richard. Henry died, leaving a widow *enceinte.* Edward suffered a recovery to the use of himself for life, remainder to the use of the heirs male of his body and the heirs male of such heirs male, and died before his daughter-in-law was delivered. Richard, the younger son, as the only heir male *in esse,* entered. The widow then gave birth to a son; and the great question was, whether he had a right to the estate rather than Richard, his uncle. It was an acknowledged rule that the title of one who takes by *purchase* cannot be divested by the birth of a child after his interest has vested in possession; but that the estate of one who takes by *descent* may. The point, therefore, was 'whether Richard, under the uses of the recovery, took by purchase or by descent.' The case excited so much interest at the time that, by the special order of Queen Elizabeth, it was adjourned from the Court of Queen's Bench, where it arose, into the

Exchequer Chamber, before the Lord Chancellor and the twelve judges. Coke was counsel for the nephew, and succeeded in establishing the celebrated rule."

The establishment of this rule was of the utmost importance to the owners of land under the feudal system, and gave to Coke, who was chiefly instrumental in procuring its establishment, such prestige that Lord Campbell says that "Thenceforth, while he remained at the bar, he was employed in every case of importance which came on in Westminster Hall, and he was in the receipt of an immense income, which gave him greater power of buying land than is enjoyed even by an eminent railway counsel at the present day. He began to add manor to manor, till at length it is said the crown was alarmed lest his possessions should be too great for a subject. According to a tradition in the family, in consequence of a representation from the Government (which in those times often interfered in the private concerns of individuals) that he was monopolizing injuriously all land which came into the market in the County of Norfolk, he asked and obtained leave to purchase 'one acre more,' whereupon he became proprietor of the great 'Castle Acre' estate, of itself equal to all his former domains." This last statement, however, rests on tradition and does not seem reasonable.

Though the feudal tenures, with their oppressive incidents, which Blackstone enumerates as seven in number—"aids, relief, primer seisin, wardship, marriage, fines for alienation, and escheat" (2 Com., 63)— were abolished in 1660 as one of the conditions for the restoration of Charles II to the throne, the rule has been so beneficial, as above stated, in making possible the transfer of land a generation earlier and subjecting it to liability for the debts of the first taker, that in England, and also in this State and many others, it remains in force, notwithstanding that often it may be contrary to the intent of the devisor or grantor to confer an estate, for life only, on the first taker. The words, "nearest heirs," means simply "heirs," and do not take this case out of the rule.

Affirmed.