W. V. HARTMAN, TRUSTEE IN BANKRUPTCY FOR T. H. (SHACK) FLYNN, BANKRUPT, v. T. H. (SHACK) FLYNN AND WIFE, MATTIE FLYNN, ET AL.

(Filed 15 April, 1925.)

1. Estates—Rule in Shelley's Case.

The rule in *Shelley's case* is now well established as a rule of property, as well is a rule of law, in the jurisdiction of our State, subject to change by statute.

2. Same—Remainders—Homestead—Bankruptcy.

A devise of land to the testator's son, and then to his bodily heirs, by the application of the rule in *Shelley's case*, gives to the son a fee-simple estate, and a further devise to his wife, should she survive him, does not affect the application of this rule; and when the son has become bankrupt, his trustee in bankruptcy may maintain his action to enter into possession of the lands and sell the same for the benefit of the creditors of the estate, subject to the contingent estate of the wife and the homestead of the bankrupt.

APPEAL by defendant, T. H. (Shack) Flynn, from a judgment of *McElroy, J.,* at November Term, 1924, of FORSYTH.

The plaintiff, Hartman, is the duly appointed trustee in bankruptcy of T. H. Flynn, who is the same person as Shack Flynn.

This action is to recover a tract of land from Shack Flynn, bankrupt, and Mattie Flynn, his wife, for the use of the bankrupt estate.

It further appears that, in order to adjudicate the rights of the children of Shack Flynn in this land, those now *in esse,* as well as those who may be hereafter born, were made parties.

The plaintiff's right to recover is dependent on item 4 of the will of Thomas W. Flynn. This item is as follows:

"I give to my son, Shack, so long as he lives, and then to his bodily heirs, the Randleman plantation, lying mostly on the east side of the road leading from the river out by H. M. Scott's to the Old Richmond Road, two small strips lying on the west side of the road, one near H. M. Scott's, and the other near Sid Butner's, known as the Old Poplar Springs; this land to be valued at $1,600.00. But if he should die before his wife, Mattie, she shall hold the same plantation as long as she remains single."

The court rendered the following judgment:

"This cause coming on to be heard before his Honor, P. A. McElroy, judge presiding at the November Term, 1924, of the Superior Court of Forsyth County, and being heard upon the pleadings and the agreed statement of facts, the court is of the opinion, and so holds, that under the terms of the will of Thomas W. Flynn, which is attached to the complaint, and under item 4 thereof, the defendant, T. H. (Shack)

Flynn, was devised a title in fee simple to the lands described in item 4 of the said will, subject only to an estate to Mattie Flynn, wife of T. H. (Shack) Flynn, during her widowhood, in the event the said T. H. (Shack) Flynn dies during the lifetime of the said Mattie Flynn.

"It is therefore decreed, ordered and adjudged that the plaintiff, W. V. Hartman, trustee in bankruptcy of T. H. (Shack) Flynn, is the owner of and is entitled to the possession of the lands described in the fourth item of said will, he holding a fee-simple title thereto, subject only to the contingent interest of the said Mattie Flynn, as aforesaid, and subject to a homestead to T. H. (Shack) Flynn, as provided by law.

"And it is further ordered that the defendant, T. H. (Shack) Flynn, and wife, Mattie Flynn, surrender possession of said lands described in the fourth item of said will immediately to the said W. V. Hartman, trustee in bankruptcy of T. H. (Shack) Flynn, bankrupt, and that the said W. V. Hartman, trustee, be put in possession thereof, subject to a homestead therein, as provided by law.

"It is further ordered that the costs of this action be taxed against the defendant, T. H. (Shack) Flynn."

The defendant, Shack Flynn, contends that he was only a life tenant of the lands in controversy, while plaintiff contends that he was a tenant in fee, subject to the contingent life estate of Mattie Flynn, his wife, and that the plaintiff therefore is entitled to the said lands for the use of the bankrupt estate, subject to this contingent life estate of Mattie Flynn and the homestead rights of Shack Flynn.

*Manly, Hendren & Womble and Forrest G. Miles for plaintiff.*
*T. W. Kallam for defendants.*

VARSER, J. It is conceded that, if the rule in *Shelley's case* applies to this devise to Shack Flynn, the judgment of the trial court must be affirmed.

The rule in *Shelley's case* is imbedded in the jurisprudence of North Carolina as a well-settled rule of property. Whatever may have been its status prior to that time, it was set at rest by *Starnes v. Hill,* 112 N. C., 1. At that time it was debated, in the minds of some, that the statute, now C. S., 1739, had the effect of abolishing this rule, but this is now no longer an open question.

We find a most interesting and learned discussion of this doctrine in Mordecai's Law Lectures, Vol. 1, 649 *et seq.* An elaborate discussion also appears in 24 R. C. L., 887. A complete American judicial history of this rule appears in the very elaborate treatise in 29 L. R. A. (N. S.), 963-1170, with a list of the North Carolina cases on pages 1165-1166.

In *Hampton v. Griggs,* 184 N. C., 13, it is said: "Whatever reasons, *pro* and *con,* may have been advanced originally in support of the wis-

dom or impolicy of following the rule in *Shelley's case,* so far as the courts of North Carolina are concerned, this is no longer an open question." "Much has been said in support of its adoption, and something in criticism; but, with us, it is a rule of property as well as a rule of law, and we must observe it wherever the facts call for its application. The Legislature alone may change it if it is thought to be unsuited to the needs of our day or to the industrial life of our times. It is one of the ancient landmarks which the fathers have set in the law, as it relates to the subject of real property, and we should be slow to remove it."

In this case the following prerequisites to the application of the rule in *Shelley's case* are collated and announced:

"(1) There must be, in the first instance, an estate of freehold in the ancestor or by the first taker; and (2) the ancestor must acquire this prior estate by, through, or in consequence of the same instrument which contains the limitation to his heirs; (3) the words 'heirs' or 'heirs of the body' must be used in the technical sense as importing a class of persons to take indefinitely in succession, from generation to generation, in the course marked out by the canons of descent; (4) the interest acquired by the ancestor and that limited to his heirs must be of the same character or quality—that is to say, both must be legal, or both must be equitable, else the two would not coalesce; and (5) the limitation to the heirs must be of an inheritance, in fee or in tail, and this must be made by way of remainder."

In the first place, the defendant asserts the nonapplicability of the rule in *Shelley's case,* because of the contingent life estate of Mattie Flynn, wife of Shack Flynn.

In *Daniel v. Harrison,* 175 N. C., 120, the identical question was decided, and the provision for Fannie A. Daw during her widowhood was held not to interfere with the application of the rule in *Shelley's case.*

In *Smith v. Smith,* 173 N. C., 124, the same question was presented. In that case the devise was: "I loan to my son, D. L. Smith, two tracts of land (describing same), to have during his life, at his death to his bodily heirs and to his wife her lifetime or widowhood."

The second intervening estate, during "her lifetime or widowhood," did not prevent the application of the rule.

In *Jones v. Whichard,* 163 N. C., 243, the rule is stated thus: "When a person takes an estate of freehold, legally or equitably, under a deed, will, or other writing, and in the same instrument there is a limitation by way of remainder, either with or without interposition of another estate, of an interest of the same legal or equitable quality to his heirs,

or heirs of his body, as a class of persons to take in succession, from generation to generation, the limitation to the heirs entitled the ancestor to the whole estate."

In *Nichols v. Gladden,* 117 N. C., 497, the rule as given in 1 Coke, 104, is stated thus: "That when the ancestor, by any gift or conveyance, taketh an estate of freehold, and in the same gift or conveyance an estate is limited either mediately or immediately to his heirs, in fee or in tail, the word 'heirs' is a word of limitation of the estate and not a word of purchase."

We see that these statements are necessarily the same. The words "either with and without the interposition of another estate" in the one perform the same office as the words "either mediately or immediately" in the other. *Ex vi terminorum* they include the contingent estate, *durante viduitate,* as provided in the instant case. *Smith v. Smith, supra.*

"The interposition of a life estate in another does not interfere with the operation of the rule, so far as the heirs are concerned, when the estate comes to them they take by descent and not by purchase, and the ancestor, or first taker, has full power of control over the property, and may sell or encumber as a full owner may, subject only to estate in remainder to the wife during her life or widowhood, and the rights incident to it." *Smith v. Smith, supra; Cotton v. Moseley,* 159 N. C., 1; *Edgerton v. Aycock,* 123 N. C., 134; *Kiser v. Kiser,* 55 N. C., 28; *Quick v. Quick,* 21 N. J. L., 13.

We therefore conclude that the contingent estate of Mattie Flynn does not prevent the application of the rule in *Shelley's case.*

It is further contended that the words "bodily heirs" are not the same as "heirs of the body." This has been adjudicated with definiteness and certainty against defendant's contention. *Blake v. Shields,* 172 N. C., 628.

In the instant case it is clear that the use of "bodily heirs" is not a *descriptio personarum,* but the use is in the technical sense. *Revis v. Murphy,* 172 N. C., 579; *Jones v. Ragsdale,* 141 N. C., 201; *Daniel v. Harrison, supra.*

In *Bank v. Dortch,* 186 N. C., 510, *Hoke, J.,* afterwards *Chief Justice,* again reviews the authorities with a wealth of learning and clearness, and decides the same contention against what is now the defendant's contention in the instant case.

In *Walker v. Butner,* 187 N. C., 535, this Court continues to reaffirm this well-established rule, and gives as a real present-day reason for its extended life by the courts, and by the sufferance of Legislature, that "it prevents the tying-up of real estate by making possible its transfer one generation earlier, and also subjecting it to the payment of the debts of the first taker."

The Court also says: "It is doubtless, for this reason, that the rule has never been repealed in North Carolina."

Accordingly, we are of opinion that the devise in the instant case comes clearly within the rule in *Shelley's case,* and had the effect to vest into Shack Flynn an estate in fee simple in the lands devised, subject to an estate in favor of Mattie Flynn, his wife, contingent upon her survival of him and during her widowhood. Inasmuch as her rights, as well as the homestead rights of Shack Flynn, are fully protected, let the judgment of the trial court be

Affirmed.