WILL T. YELVERTON ET AL. v. WILL E. YELVERTON ET AL.

(Filed 1 December, 1926.)

**Wills—Devise—Lands—Estates—"Heirs at Law"—Descent and Distribution—Personalty.**

> Where the testatrix has died leaving her surviving no husband, nor lineal descendants, nor father, nor mother, nor brother, nor sister, nor issue of such, and has by the express terms of her will devised certain residue in her lands, transmitted by descent from her father, to her "heirs at law," these heirs taking under the same tenure the same quality and quantity of the estate, acquire the lands as if transmitted to them under the Fourth Canon of Descent, and not as purchasers under the will, and are to be determined by their being of the same blood of the transmitting ancestor, the father, in exclusion of the collateral relations of the testatrix on her mother's side. As to personalty so devised, the next of kin would take under the statute of distribution.

CIVIL ACTION, before *Cranmer, J.,* at August Term, 1926, of WAYNE.

The action was commenced for the partition of 222½ acres of land belonging to Mary Emma Aycock, who died on 14 February, 1925. There was an answer filed in the proceeding raising an issue, and the cause was transferred to the Superior Court. In the Superior Court there was an agreed statement of facts, which may be briefly recapitulated as follows:

1. Mary Emma Aycock died in Wayne County on 14 February, 1925, leaving a last will and testament, which, together with the codicil thereto, was duly admitted to probate and admitted to be the last will and testament of said testatrix.

2. Mary Emma Aycock, at the time of her death, left her surviving no husband, nor lineal descendants, nor father, nor mother, nor brother, nor sister, nor issue of such.

3. The plaintiffs are lineal descendants of deceased brothers and sisters of the mother of said testatrix, Mary Emma Aycock, and are the next collateral relations, capable of inheriting of said Mary Emma Aycock, who are of the blood of the mother of said Mary Emma Aycock.

4. The answering defendants are lineal descendants of deceased brothers and sisters of the father of said Mary Emma Aycock, and are the next collateral relations, capable of inheriting of said Mary Emma Aycock, who are of the blood of the father of said Mary Emma Aycock.

5. That besides real estate situated in the town of Fremont and devised to Will T. Yelverton, the only other real estate of which the said Mary Emma Aycock died seized and possessed, was a farm of 222 acres, which said farm was transmitted to the said Mary Emma Aycock by descent from her deceased father, Jonathan T. Edgerton.

The will of Mary Emma Aycock is as follows: "I, Mary Emma Aycock, of the town of Fremont, State of N. Carolina, declare this to be my last will and testament.

At my death it is my will that all my just debts and all expenses for my burial and burying grounds, which includes a proper burial, correct engraving on tombstone, erecting marble head and foot slab to grave, and all other necessary work for neatness and completion be paid out of my estate.

I intrust to Memorial Church (Baptist faith) in Wayne County, of which my parents were members, the keeping of the sum of one thousand dollars, to be loaned out and interest used to keep up the graves or burying places of my father and mother, myself and husband, and our two children, six in all, in neat, clean, decent order, the names of whom may be found on tombstones as follows, in the Aycock burying ground near what is called Hook's Crossing, about one-half mile, more or less, on east side of W. & W. R. R., my husband's old home: Eld. J. T. Edgerton and wife, Penelope; J. W. Aycock and wife, Emma, and our two little children, Jonathan B. and Mary Leila, all in the same row. When the above request is carried out, work paid for, and the said church paid for its trouble, the remainder should there be any, I desire to be used for the benefit of said church, or their pastor. I give and bequeath to said Memorial Church the sum of one thousand dollars, to. be loaned out and interest used for the benefit of said church, in whatever way the church thinks best and proper, to have and to hold the same unto the said Memorial Church forever. I desire that the note of three hundred dollars and interest held against Oscar and Arthur Hooks be canceled forever.

I give, devise and bequeath to my cousin, Will T. Yelverton, his heirs and assigns all my real estate, hardware stock, bank stock and house furnishings in the said town of Fremont, except my fancy quilts and homemade counterpanes; these I wish divided between Hettie Bell Yelverton, Lillian Wiggins, Serena Peacock and Flora Hooks, except one quilt which is to be Mary P. Farmer's, provided himself and family, or family, live with, care for, and kindly treat me the remainder of my life, and seeing to it that I have a proper and suitable burial, otherwise the above statement is to be annulled.

One-half of all my other estate, both real and personal, I give, devise and bequeath in equal shares to the said Will T. Yelverton, and my uncle, H. F. Yelverton, their heirs and assigns forever.

All the rest, or other half, residue and remainder of my real and personal estate, I give, devise and bequeath to my heirs at law.

All just debts, all tombstone work and engraving and all other necessary expenses for my burial and burying ground must all be completed

and paid for before any of my estate, either real or personal be divided or interfered with.

I appoint my said uncle, H. F. Yelverton, and the said Will T. Yelverton executors of this my will and desire that they shall not be required to give any security for the performance of their duties.

In witness whereof, I, Mary Emma Aycock, have hereunto set my hand and seal this 8 January in the year of our Lord nineteen hundred and twenty. Mary Emma Aycock. (Seal.) Frank Watson, Cutler Lee."

Codicil: "I, Mary Emma Aycock, of the town of Fremont, State of North Carolina, declare this to be the codicil to my will, and is my last will and testament.

The portion or share made in my will to my uncle, H. F. Yelverton (now deceased), I give, devise and bequeath in equal shares to his son, Will E. Yelverton and Lillian Wiggins, their heirs and assigns forever.

In witness whereof, I, Mary Emma Aycock, have hereunto set my hand and seal this 6 October, in the year of our Lord nineteen hundred and twenty-one. Mary Emma Aycock. (Seal.)"

The judgment of the court was as follows: "This cause coming on to be heard before his Honor, E. H. Cranmer, Judge Presiding, upon an agreed statement of facts, it is considered and adjudged by the court:

(1) That under the provision, 'all the rest, or other half, residue and remainder of my real and personal estate, I give, devise and bequeath to my heirs at law,' contained in the will of Mary Emma Aycock, all the rest, or other half, residue and remainder of the 222-acre farm referred to in said agreed statement of facts, and the proceeds of the sale thereof, pass to the next collateral relations, capable of inheriting, of the said Mary Emma Aycock, who are of the blood of her father, and also to the next collateral relations, capable of inheriting, of the said testatrix, who are of the blood of her mother.

(2) That in the distribution of the proceeds of the rest, or other half, residue and remainder of the said Mary Emma Aycock's real estate, Will T. Yelverton, Will E. Yelverton and Lillian Wiggins, the first half of the said real estate having been devised to them in a former item, and the said specific devises and bequests having been made to the said Will T. Yelverton, receive their proportionate part of the other half of said real estate.

(3) That in the distribution of the proceeds of the rest, or other half, residue and remainder of said Mary Emma Aycock's personal estate, the said Will T. Yelverton, Will E. Yelverton and Lillian Wiggins, the first half of said personal estate having been bequeathed to them in a former item, and the said specific devises and bequests having been made to the said Will T. Yelverton, receive their proportionate part of the other half of the said personal estate.

It is further considered and adjudged by the court that the costs of this action be paid out of the fund arising from the sale of the said real estate."                    E. H. CRANMER, *Judge Presiding."*

*W. A. Finch and J. S. Manning for plaintiffs.*
*Dickinson & Freeman and Langston, Allen & Taylor for defendants.*

BROGDEN, J.  Two questions are presented for determination:

1st.  Who are the heirs at law of the testatrix, Mary Emma Aycock, with respect to the 222-acre farm, under the clause of the will devising "all the rest, or other half, residue and remainder of my real and personal estate, I give, devise and bequeath to my heirs at law?"

2d.  Who are the heirs at law of the testatrix, Mary Emma Aycock, with respect to her personal property?

The term "heirs at law," so far as real estate is concerned, signifies those who would have taken or been entitled to the property had the testatrix died intestate; or, in other words, "an heir at law" is the one upon whom the law casts inheritance.  *Carroll v. Mfg. Co.,* 180 N. C., 367; *Reid v. Neal,* 182 N. C., 192.  In order to answer the first question arising upon the record it is necessary to determine whether the "heirs at law" take by descent or by purchase under the will.  If the heirs at law take by purchase under the will of the testatrix, then the judgment in this case is correct; but, if they take by descent, the judgment must be reversed.

The plaintiffs contend that the "heirs at law" would take as purchasers under the will, and therefore the next collateral relations of both the blood of the father and mother of the testatrix would take the property.  What is purchase in law?  "Purchase in law denotes the acquisition of an estate in lands by a man's own agreement or act in contradistinction to acquisition by descent from an ancestor.  The popular signification of the word purchase, i. e., to buy, falls far short of the comprehensive meaning given to the word by the law.  If land be given to a man by deed or will, in fee or in fee tail, he is a purchaser.  But there is this distinction in the case of a gift by will:  If the ancestor devised his whole estate to his heir at law in the identical manner in which it would have descended to the heir if no devise had been made, the heir takes by descent and not by purchase.  But he must take the same estate and in the same subject-matter to come under the rule."  Mordecai's Law Lectures, vol. 1, 648.

In the case of *Campbell v. Herron,* 1 N. C., 386, the Court holds that, "It is not doubted, but that if a person devises land to one who is his next heir, and his heirs, the devise is void, and the heir shall take by descent; or if a testator devise that his lands shall descend to his son, the devise is void, and the devisees shall be in by descent."

In *M'Kay v. Hendon,* 7 N. C., 211, *Taylor, C. J.,* says: "If a man devise his land to his heirs without changing the tenure or quality of the estate, the heirs are in by descent; and in all cases where they take the same estate by will, which they would have taken if the ancestor had died intestate, the law is the same."

In *Wilkerson v. Bracken,* 24 N. C., 315, *Ruffin, C. J.,* says: "As the devise from John Bracken to his daughter did not change the nature and quality of the estate, which she would have taken had he died intestate, she took by descent and not by devise; according to the well-known preference of the common law for the title of descent." *Kiser v. Kiser,* 55 N. C., 28.

In the case of *Poisson v. Pettaway,* 159 N. C., 650, *Brown, J.,* plants the decision upon the *Bracken* case and states the principle thus: "At common law, a devisee who takes the same quality and nature of estate under the will as he would have taken by descent had the testator died intestate, takes by descent, owing to the preference of the common law for the title of descent. Our statute puts a similar devise between such parties on the same footing with the descent." The *Poisson* case, *supra,* is cited with approval in *Dixon v. Pender,* 188 N. C., 792.

These decisions are referred to in order to show that for more than one hundred years it has been the law in this State that if a devisee under a will takes the same quality and nature of estate as he would have taken if the testator had died intestate, he is in by descent and not by purchase.

But do the "heirs at law" referred to in the will of Mary Emma Aycock, take the same quality of estate and by the same tenure as if she had died intestate? Black's Law Dic. defines the quality of an estate as follows: "The period when, and the manner in which, the right of enjoying an estate is exercised. It is of two kinds: (1) The period when the right of enjoying an estate is conferred upon the owner whether at present or in future; and (2), the manner in which the owner's right of enjoyment of his estate is to be exercised, whether solely, jointly, in common, or in coparcenary."

The "heirs at law" of Mary Emma Aycock, under the devise in question, take a present estate in fee simple as tenants in common. If Mary Emma Aycock had died intestate with respect to this particular farm, her heirs at law would take a present estate in fee simple as tenants in common. Therefore, the "heirs at law" of the testatrix, having taken under the devise the same quality of estate and the same tenure that they would have taken if she had died intestate, take by descent and not by purchase.

Now, if the "heirs at law" take by descent, certainly it must follow that the statute of descents would govern the devolution of the property.

As it appears that the testatrix, Mary Emma Aycock, at the time of her death, left her surviving, no husband, nor lineal descendants, nor father, nor mother, nor brother, nor sister, nor issue of such, the fourth canon of descent would apply. This canon or rule is as follows: "On failure of lineal descendants, and where the inheritance has been transmitted by descent from an ancestor, or has derived by gift, devise or settlement from an ancestor, to whom the person thus advanced would, in the event of such ancestor's death, have been the heir or one of the heirs, the inheritance shall descend to the next collateral relations, capable of inheriting, of the person last seized, who were of the blood of such ancestor, subject to the two preceding rules." The reason for adopting the fourth canon is given by *Gaston* and appears on the Journal of the House of Commons of North Carolina in the proceedings had on Friday, 8 December, 1808, and is thus stated: "The fourth rule has for its principal object the securing to the family of the man, by whose industry the property was acquired, the enjoyment of such property, in preference to those who have no consanguinity with it." *Wilkerson v. Bracken,* 24 N. C., 323.

The record discloses that this farm in controversy descended to the testatrix, Mary Emma Aycock, from her father, Jonathan T. Edgerton. Therefore, if Mary Emma Aycock had died intestate, this farm would vest in her heirs at law who were of the blood of such transmitting ancestor, to wit, Jonathan T. Edgerton. As the testatrix devised "all the rest, or other half, residue, and remainder" of her real estate and personal property to her "heirs at law," then, of necessity, one-half of this farm would belong to and vest in, the answering defendants, who are the next collateral relations, capable of inheriting, of the said Mary Emma Aycock, who are of the blood of Jonathan T. Edgerton, the transmitting ancestor. As the land has been sold and converted into money, without prejudice, the proceeds would, in law, be deemed realty. *Gillespie v. Foy,* 40 N. C., 280.

Dean Mordecai, in his Law Lectures, vol. 1, p. 648, points out an exception as follows: "Thus, if a man owns two tracts of land and devises one tract to A and the other tract to B—A and B being his heirs—the rule does not apply." This exception is based upon the case of *Raiford v. Peden,* 32 N. C., 466, in which *Justice Pearson* says: "If there be two coheirs and one tract of land is devised to one, and another tract to the other, they take by devise and not by descent, for under the devise each has an estate in severalty in the respective tracts; whereas, by descent, each would have had an undivided moiety in the whole." Sheph. Touchstone, 451. But this exception does not apply to the case now under consideration, because one-half of the residuary estate, including the farm, is given to Will T. Yelverton, Will E. Yel-

verton and Lillian Wiggins, and "the rest, or other half" is given to the "heirs at law" of the testatrix. The "heirs at law," therefore, would have an undivided moiety in said farm with the devisees named.

The plaintiffs rely upon the case of *Kirkman v. Smith,* 174 N. C., 603. The devisor in that case was D. W. Flow, and the devise was "to Margaret G. Kirkman . . . to be hers, her lifetime, and then to go to Guy Kirkman and Marvin Kirkman, and if they should die without any bodily heirs, the said land to go back to the Flow heirs." Marvin Kirkman died intestate and unmarried, leaving no issue or lineal descendants. Guy Kirkman married and had children. Margaret Kirkman and Guy Kirkman made a contract to sell the land to defendants, who refused to take it upon the ground that the said plaintiffs could not convey an absolute title in fee simple. *Justice Walker* held that rule four of the Canons and Descent had no application for the reason that "said rule is confined to cases where there is no other disposition of the property by will which would interfere with the prescribed course of descent." This reasoning is sound and correct because the will devised the property to the Flow heirs upon the contingency that the Kirkmans should die without any bodily heirs. This devise, therefore, interfered with the prescribed course of descent, and hence the devisees thereunder took by purchase.

Our case is essentially different, and the principle enunciated in *Kirkman v. Smith* does not apply.

We hold, therefore, that as to "all the rest, or other half," "residue and remainder," the "heirs at law" who are the blood of Jonathan T. Edgerton, would be entitled to one-half of the net proceeds of said farm.

It appears that there was certain personal property undisposed of. The "heirs at law," with respect to personal property would be her next of kin as designated by the statute of distribution. *Everett v. Griffin,* 174 N. C., 106.

Reversed.