GARNETT JONES WELCH ET AL. v. CHARLES GIBSON ET AL.

(Filed 11 May, 1927.)

**1. Estates—Wills—Devise—Rule in Shelley's Case—Contingent Remainders—Life Estates.**

An estate to the testatrix's daughter for the term of her natural life, and at her death to her bodily heirs as entailed from generation to generation, further qualified so that the living children at the death of the first taker shall share equally: *Held,* those taking under the further limitation do not take as her heirs or the heirs of the ancestor, and interpose a life estate with a contingent limitation over to such of the children living at her death *per capita* and not *per stirpes,* and prevents the application of the rule in *Shelley's case* giving the first taker during her life having living children an absolute fee-simple title.

**2. Same—"Heirs."**

In order for the application of the rule in *Shelley's case* the limitation over to the heirs of the body under a devise must be such heirs as would take (except for the intervention of our statute, C. S., 1734), under the law by descent in the class designated by the will, and where there is a contingent limitation over to those who would take a different estate not *per stirpes,* or as a class different from heirs, the two estates will not merge during the life of the first taker so that he can convey the fee-simple absolute title.

APPEAL by plaintiffs from *Finley, J.,* at April Term, 1927, of MECKLENBURG.

Controversy without action submitted on an agreed statement of facts.

Plaintiffs, being under contract to convey a certain lot of land to the defendant, Charles Gibson, duly executed and tendered a deed therefor and demanded payment of the purchase price as agreed, but the said defendant declines to accept the deed and refuses to make payment of the balance of the purchase price, claiming that the title offered is defective.

It was agreed that if, in the opinion of the court, under the facts submitted, the plaintiffs were able to convey a good and indefeasible fee-simple title to the lot in question, judgment should be entered for the plaintiffs, otherwise for the defendant.

The court, being of opinion that the plaintiffs were not able to convey a good and sufficient fee-simple title, gave judgment for the defendant, from which the plaintiffs appeal, assigning error.

*Preston & Ross for plaintiffs.*
*No counsel appearing for defendant, Charles Gibson.*
*F. R. McNinch for defendants, Mary S. Hagar and A. B. Hager.*

STACY, C. J.  On the hearing the sufficiency of the title offered was properly made to depend upon the construction of the following provision in the will of Mary M. Kennedy:

"I will and bequeath to my daughter, Garnette Jones Welch, all of my property, both personal and real, for the term of her natural life, and at the death of my said daughter, Mrs. Welch, all this property so devised shall go to the bodily heirs of Mrs. Welch, and to go as entailed property for succeeding generations; all living children at the death of the said Mrs. Welch are to have an equal share in this property during the term of their lives, and shall go to the heirs of these said legatees from generation to generation forever.  No wood shall be sold off this place, and only such wood shall be cut during the lifetime of the said Mrs. Welch, or the minority of her youngest children, only so much as may be necessary for firewood for the house and for the cooking stove."

The fact situation is that Mary M. Kennedy died testate in 1914, leaving an only daughter, Mrs. Garnett Jones Welch, coplaintiff with her husband herein, who now has seven living children, four of whom are infants, and none of whom are parties to this controversy, save the defendant, Mary S. Hager, who was made a party at her own request, and who claims an interest in the land under her grandmother's will.

The plaintiffs claim that Mrs. Garnett Jones Welch acquired a fee-simple title to all her mother's real estate under the above provision of her will, and that the deed tendered is sufficient to convey a good and indefeasible fee-simple title to the lot described therein, while the defendant, Charles Gibson, as well as his codefendant, Mary S. Hager, contends that the *feme* plaintiff, under the above provision of her mother's will, takes only a life estate in the property so devised.

It is conceded that the relative merits of the controversy depend upon whether or not the limitations in the above clause of the will of Mary M. Kennedy to the heirs or heirs of the body of her daughter, Mrs. Garnett Jones Welch, are so framed as to attract the rule announced in the celebrated English case of *Wolfe v. Shelley,* 1 Coke, 93b, commonly known as the rule in *Shelley's case,* which, with us, has become a rule of property as well as a rule of law, and is stated by Mr. Preston, an eminent English authority, as abridged by *Chancellor Kent* in his Commentaries (4 Kent Com., 215), as follows: "When a person takes an estate of freehold, legally or equitably, under a deed, will, or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs or heirs of his body, as a class of persons to take in succession from generation to generation, the limitation to the heirs entitles the ancestor to the

whole estate." 1 Prest. Est., 263. This definition was quoted with approval in *Smith v. Proctor,* 139 N. C., 314.

The origin of the rule, as well as the wisdom of its adoption, has been the subject of much curious and learned speculation. Though found among the remains of feudality, it is neither a relic of barbarism nor a part of the rubbish of the dark ages, but rather a Gothic column, as it were, which has been preserved to aid in sustaining the fabric of our modern social system. *Nicholson v. Gladden,* 117 N. C., 497; *Starnes v. Hill,* 112 N. C., 1; Note, 29 L. R. A. (N. S.), 963; *Daniel v. Bass, ante,* 294; *Foley v. Ivey, ibid.,* 453; *Polk v. Faris,* 9 Yerg., 209; 30 Am. Dec., 400. It prevents the tying up of real estate during the life of the first taker, facilitates its alienation a generation earlier, and at the same time subjects it to the payment of the debts of the ancestor. It also favors dower. *Walker v. Butner,* 187 N. C., 535; *Crisp v. Biggs,* 176 N. C., 1; *Cohoon v. Upton,* 174 N. C., 88.

The effect of the rule, when it applies, is simply this: By force of the limitation to the ancestor's heirs, general or special, the rule in *Shelley's case* operates to give to the first taker, who already has an estate of freehold in the land, the inheritance also, by conferring the remainder on him, as the stock from which alone the heirs can inherit, and the source alone from which their inheritable blood can spring. *Hampton v. Griggs,* 184 N. C., 13; *Jones v. Whichard,* 163 N. C., 241.

It is said by many writers on the subject that the limitation to the heirs unites and coalesces with the limitation of the freehold in the ancestor, and thus operates to vest in the first taker a fee simple or a fee tail, as the case may be, divided or split by intervening limitations, where there are any. *Benton v. Baucom,* 192 N. C., 630. Thus, a gift or a grant to one for life, with remainder to his heirs, gives him a fee simple in possession by the merger of his life estate in the inheritance. But a gift or grant to one for life, remainder to another for life, remainder to the heirs of the first taker, gives to the first taker an estate for life in possession, with a fee simple in expectancy—a merger in this case being prevented by the intermediate life estate. *Hileman v. Bouslaugh,* 13 Pa. St., 344. In such case, however, the ancestor or first taker may deal with the property as full owner thereof, subject only to the intervening life estate and its incidents. *Smith v. Smith,* 173 N. C., 124; *Cotten v. Moseley,* 159 N. C., 1.

A donor or grantor is no more competent to make a tenancy for life a source of inheritable succession than he is competent to create a perpetuity, or a new canon of descent; and the rule is too intimately connected with the doctrine of estates to be separated from it without breaking the ligaments of property. *Benton v. Baucom,* 192 N. C., 630; *Crisp v. Biggs, supra.* It is one of the ancient landmarks which the

fathers have set in the law as it relates to the subject of real property. *Hampton v. Griggs, supra.*

Mr. Tiffany, in his valuable treatise on Real Property, vol. 1 (2 ed.), 529, gives a practical statement of the rule, and discusses its application to various illustrative cases, citing numerous authorities in support of the text, as follows:

"If, after the limitation of a particular estate of freehold in favor of a person, a remainder is limited in favor of his heirs, or the heirs of his body, such person will take an estate in remainder in fee simple or fee tail, according as the limitation in remainder is in favor of his heirs or the heirs of his body, and the particular estate will merge therein, unless another estate be interposed between the particular estate and the remainder.

"In the case of a limitation to A. for life, with remainder to his heirs or to the heirs of his body, which is the typical form calling for an application of the rule in *Shelley's case,* the effect of the rule, it would seem, as above indicated, is not to operate directly upon the life estate in A., but to give to the remainder the effect of a gift to A., the whole limitation taking effect as if it were to A. for life, with remainder to A. and his heirs, or to A. and the heirs of his body. In the remainder in fee or in tail thus vested in A., the estate limited to him for life will merge, and he will consequently take a fee simple or fee tail in possession, while the heirs or heirs of the body will take nothing.

"If, to take another case, the remainder to the heirs or heirs of the body is conditioned on some event, as in the case of a limitation to A. for life, with remainder, if A. shall survive B., to A.'s heirs, or the heirs of his body, A. then has an estate for life, and a remainder in fee or in tail conditioned on his survival of B. In such case, the remainder in favor of A. and his heirs being contingent, the particular estate will not merge therein, but, upon the vesting of the remainder by the death of B. before A., merger will take place, and A. will have, as in the previous case, an estate in fee simple or fee tail in possession.

"If there is an intermediate estate interposed between the life estate in the ancestor and the remainder to the heirs, as in the case of a limitation to A. for life, remainder to B. for life or in tail, remainder to the heirs of A., or to the heirs of A.'s body, A. will then have a remainder in fee or in tail, as in the previous cases. The vested remainder in B., however, interposed between A.'s life estate and his remainder in fee or in tail, will prevent the merger of the life estate in the remainder. In such case, if the remainder in B. should terminate before the end of A.'s life estate, this latter will then merge in the fee simple or fee tail of A. If the remainder interposed in favor of B. is a contingent and not a vested remainder, while A.'s life estate and his remainder in fee or in

tail are united in him, the former is not absolutely merged in the latter, and they become separated upon the vesting of B.'s estate.

"The application of the rule is not affected by the presence of a power of appointment, the exercise of which would destroy the limitation in favor of the heirs or heirs of the body. For instance, in the case of a devise to A. for life, with power to convey in fee simple, and after A.'s death to A.'s heirs, the rule will apply to the same extent as if no power had been given to A.

"The particular estate ·in the ancestor and the remainder in favor of the heirs must arise under the same instrument, and so the rule will not apply; for instance, when A., being tenant for life, with remainder to the heirs of B., conveys his life estate to B. The opinion has been expressed that an estate created by the exercise of a power contained in the instrument by which the particular estate is created, is to be regarded as arising under the same instrument for the purposes of this requirement. This opinion has, however, been questioned.

"The rule does not apply, it has been decided, if the limitation by way of remainder is to the heirs of the body of both the donee of the particular estate and of another person, as when there is a gift to a man for life, with remainder to the heirs of the bodies of such man and his present wife. This is not the same as a gift to a man with remainder to the heirs of the body of such man by his present wife, since in the former case the heirs are to be ascertained upon the death of the last survivor of the husband and wife, while in the latter case they are to be ascertained upon the death of the husband. In the latter case the rule would apply.

"The rule has been held to apply in the case of a limitation by devise in favor of the 'heir' or 'heir male,' in the singular number, of the person first named, as well as when in favor of his heirs or heirs of the body."

In the case at bar, the devise is to the plaintiff for the term of her natural life, and at her death it is provided that all the property so devised "shall go to the bodily heirs of Mrs. Welch, and to go as entailed property for succeeding generations." Had the will stopped here, under all the decisions, a typical case for the application of the rule would have been presented, for, as said by *Black, J.*, in *Steacy v. Rice,* 27 Pa. St., 95; 67 Am. Dec., 447, "the law will not treat that as an estate for life which is essentially an estate of inheritance, nor permit anyone to take in the character of heir unless he take also in the quality of heir." *Hartman v. Flynn,* 189 N. C., 452; *Bank v. Dortch,* 186 N. C., 510. In other words, an *heir* is one upon whom the *law* casts an estate at the death of the ancestor (II Blackstone, ch. 14), and as it is necessary to consult the law to find out who the heir of the ancestor is, the law, speaking through the rule in *Shelley's case,* in substance, says:

"He who would thus take in the character of heir must take also in the quality of heir; that is, *as heir* by descent under the law and not by purchase under the instrument." *Yelverton v. Yelverton,* 192 N. C., 614. But immediately the testatrix added: "All living children at the death of the said Mrs. Welch are to have an equal share in this property during the terms of their lives." From this limitation, it would seem that the testatrix intended to vest in the children of Mrs. Welch, living at her death, in equal shares, contingent remainders in the property, thus taking the case out of the operation of the rule, so far as the devise to the plaintiff is concerned. *Williams v. Sasser,* 191 N. C., 453; *Haar v. Schloss,* 169 N. C., 228; *May v. Lewis,* 132 N. C., 115; *Sessoms v. Sessoms,* 144 N. C., 121. And while in the first instance she apparently used the words "bodily heirs" in a technical sense *(Blake v. Shields,* 172 N. C., 628), yet, in the very next clause, it clearly appears, we think, that she had in mind the children or issue of her daughter, Garnett Jones Welch, living at her death, who were to take *per capita* and not *per stirpes. Burton v. Cahill,* 192 N. C., 505; *Pugh v. Allen,* 179 N. C., 307.

It has been held in England, ever since the leading case of *Wright v. Jesson,* in the House of Lords, 2 Bligh., 2, which overruled *Doe v. Wright,* in the King's Bench, 5 M. and S., 95, that the words "equally to be divided," or "share and share alike," superadded to the limitation to the heirs, or to heirs of the body, do not prevent the application of the rule, and such was declared to be the law of this State in *Ross v. Toms,* 15 N. C., 376, a case decided prior to the Act of 1784, now C. S., 1734. But in *Ward v. Jones,* 40 N. C., 400, decided in 1848, and expressly followed with approval in *Mills v. Thorne,* 95 N. C., 362, *Gilmore v. Sellers,* 145 N. C., 283, and *Haar v. Schloss,* 169 N. C., 228, it was held "that in all devises of land, made since that time (1784), the words 'to be equally divided' prevent the application of the rule in *Shelley's case,* and that the first taker has only an estate for life." Further animadverting on the subject, *Pearson, J.,* delivering the opinion of the Court, said: "The rule in *Shelley's case* only applies when the *same persons* will take the same estate, whether they take by descent or purchase; in which case they are made to take by descent, it being more favorable to dower, to the feudal incidents of seigniories, and to the rights of creditors, that the first taker should have an estate of inheritance; but when the persons taking by purchase would be different, or have different estates than they would take by descent from the first taker, the rule does not apply, and the first taker is confined to an estate for life, and the heirs, heirs of the body, or issue in wills, take as purchasers. The words 'to be equally divided between the issue' take in *different persons* than simply the word 'issue,' used as a word of descent; for, in the latter case, the person or persons to take would be

ascertained by the rules of descent—there would be representation—and the taking would be *per stirpes;* while in the former the rules of descent would have no application, and there must be an equal division *per capita.* Hence, the use of these words prevents the application of 'the rule,' and the first taker has but an estate for life, except in cases where there is some paramount intent which would be defeated unless the first taker be entitled to an estate of inheritance."

The sense in which the words "heirs" or "heirs of the body" are employed, whether technical or other, is the controlling factor in determining the applicability or nonapplicability of the rule in *Shelley's case. Hampton v. Griggs, supra.* "In determining whether the rule in *Shelley's case* shall apply, it is not material to inquire what the intention of the testator was as to the quantity of estate that should vest in the first taker. The material inquiry is, What is taken under the second devise? If those who take under the second devise take the same estate they would take as heirs or heirs of his body, the rule applies"; otherwise, not. *Crockett v. Robinson,* 46 N. H., 454.

In the first limitation to the bodily heirs of Mrs. Welch it is provided that the estate shall go as "entailed property," while in the ulterior limitation it is apparently released from its character as entailed property and limited generally to the "heirs of these said legatees." The will was drawn by a justice of the peace, who, it seems, according to the contention of the defendant, "overspoke himself," or got lost in a multiplicity of words. At least, his arrangement of legal expressions has had a puzzling effect upon those who have been asked to find out their meaning, when so arranged, and to advise accordingly. "A little learning is a dangerous thing," says Pope, which properly interpreted means that expert knowledge in the hands of an inexpert is a dangerous thing. And so it is. But in the language of Huxley, "If a little knowledge is dangerous, where is a man who has so much as to be out of danger" when he is dealing with the rule in *Shelley's case?* Or forsooth did the student answer with a correct guess, when, on being asked the meaning of the rule, he said: "The rule in *Shelley's case* is very simple if you understand it. It means that the same law which was applied in that case applies equally to every other case just like it."? And so it does. But when is a case "just like it," or so nearly so as to come within the operation of the rule? That is the puzzling question.

Appellees further point out that the will contains a prohibition against selling wood from the place during the lifetime of Mrs. Welch, which, they say, shows a clear intent on the part of the testatrix that the first devise should be limited to a life estate. 2 Minor's Institutes, 400, *et seq.*

The cases of *Rollins v. Keel,* 115 N. C., 68, *Puckett v. Morgan,* 158 N. C., 344, *Jones v. Whichard,* 163 N. C., 241, *Pugh v. Allen,* 179

BARBER *v.* R. R.

N. C., 307, *Blackledge v. Simmons,* 180 N. C., 535, *Wallace v. Wallace,* 181 N. C., 158, *Reid v. Neal,* 182 N. C., 192, and *Hampton v. Griggs,* 184 N. C., 13, are cited as supporting, in tendency at least, the judgment entered in the court below. The distinction between this line of cases, in which the rule has been held not to be applicable to the limitations appearing therein, and the long line of decisions in which it has been held to be applicable and firmly established as the law of this jurisdiction, was first pointed out in *Pugh v. Allen, supra,* and repeated in *Hampton v. Griggs, supra,* substantially as follows: When there is an ulterior limitation which provides that upon the happening of a given contingency, the estate is to be taken out of the first lines of descent and then put back into the same line, in a restricted manner, by giving it to some, but not to all, of those who presumptively would have shared in the estate as being potentially among the heirs general of the first taker, this circumstance may be used as one of the guides in ascertaining the paramount intention of the testator, and, with other indicia, it has been held sufficient to show that the words "heirs" or "heirs of the body" were not used in their technical sense. Herein lies the distinction between the cases above mentioned and *Benton v. Baucom,* 192 N. C., 630, for in this latter case, the ulterior limitation was to the testator's own three children by a former marriage, who were not among the heirs general of his stepdaughter, the first taker, for she was the daughter of testator's second wife by a prior marriage, a circumstance not fully elaborated in that case.

As the judgment appears to be correct, it is approved.

Affirmed.