JOHN JUNIOR WHITE, JAMES DONALD WHITE, VIRGINIA GREEN, LILLIE W. PATE, PETITIONERS v. MILDRED FUTRELL LACKEY, AND MARGARET FUTRELL DeLOATCHE, RESPONDENTS

No. 786SC267

(Filed 20 March 1979)

1. Wills § 33— rule in Shelley's Case

   In order for the rule in Shelley's Case to apply, it is generally said that (1) there must be an estate of freehold in the ancestor; (2) the ancestor must acquire that estate in the same instrument containing the limitation to his heirs; (3) the words "heirs" or "heirs of the body" must be used in the technical sense

meaning an indefinite succession of persons, from generation to generation; (4) the two interests must be either both legal or both equitable; and (5) the limitation to the heirs must be a remainder in fee or in tail.

**2. Wills § 33.1 — inapplicability of rule in Shelley's Case**

Where testator devised land to his granddaughter "during her natural life and at her death to the lawful heirs or heirs of her body," and provided in another item of the will that in the event the granddaughter died leaving no lawful heir or heirs of her body, the land should go to testator's daughter for life and at her death to her children, the rule in Shelley's Case did not apply to give the granddaughter a fee tail converted into a fee simple by G.S. 41-1 since the testator's daughter would be a lawful heir of testator's granddaughter, who could not die without lawful heirs in the general sense as long as the daughter lived; in the gift over, the estate was taken out of the first line of descent and placed back into the same line in a restricted manner by giving it to some but not all of those who presumptively would have shared in the estate as the heirs in general of the first taker; and it appears, therefore, that the testator did not use the term "lawful heirs or heirs of her body" in the technical sense but rather intended the term to mean the issue of the granddaughter.

APPEAL by petitioners from *Martin (Perry), Judge.* Judgment entered 7 November 1977 in Superior Court, NORTHAMPTON County. Heard in the Court of Appeals 11 January 1979.

Petitioners instituted this action on 26 March 1975 claiming ownership of land devised in the will of R. J. Ricks, probated in 1922 in Northampton County.

In Item Two of the will the testator devised the property in question:

"to my granddaughter, Jesse Naomi Warren, during her natural life and at her death to the lawful heir or heirs of her body."

In Item Four of his will, the testator states:

"In the event that my granddaughter Jesse Naomi Warren dies leaving no lawful heir or heirs of her body, then, in that event, I devise the land described in Item Two of this will to my daughter Mary G. Vick during her natural life and at her death to her children."

On 23 June 1931, the granddaughter, Jesse Naomi Warren, and her husband conveyed the property to L. M. Futrell, in fee simple. In his will, L. M. Futrell left the property to his daugh-

ters, Mildred Futrell Lackey and Margaret Futrell DeLoatch, the respondents, in fee simple. On 29 June 1970, Mildred Futrell Lackey and her husband conveyed their interest in the property to Margaret Futrell DeLoatch and her husband.

Jesse Naomi Warren died on 16 December 1974 and was survived by four children, the petitioners herein, who contend that they took the land under the will of R. J. Ricks, subject only to their mother's life estate. The facts are not disputed. The trial judge concluded that the rule in Shelley's Case applied to the devise in question and, therefore, that the respondents were lawfully seized of the property. The court entered summary judgment in favor of respondents, and petitioners appealed.

*Duke and Brown, by J. Thomas Brown, Jr., and Donald M. Wright, for petitioner appellants.*

*Revelle, Burleson and Lee, by L. Frank Burleson, Jr.; Gillam, Gillam and Smith, by M. B. Gillam, Jr., Sarah Starr Gillam and Lloyd C. Smith, Jr., for respondent appellees.*

VAUGHN, Judge.

If the rule in Shelley's Case applies to the devise, Jesse Naomi Warren was vested with a fee tail estate converted to a fee simple estate by operation of G.S. 41-1, and the judgment should be affirmed. The rule in Shelley's Case is as follows:

> " 'When a person takes an estate of freehold, legally or equitably, under a deed, will, or other writing, and in the same instrument there is a limitation by way of remainder, either with or without interposition of another estate, of an interest of the same legal or equitable quality to his heirs, or heirs of his body, as a class of persons to take in succession, from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate.' " *Jones v. Whichard,* 163 N.C. 241, 243, 79 S.E. 503, 504-05 (1913).

If the persons who take under the second devise take the same estate they would take as heirs of the ancestor, the rule in Shelley's Case will apply. *Welch v. Gibson,* 193 N.C. 684, 138 S.E. 25 (1927).

The rule in Shelley's Case takes its name from an early English case, *Wolfe v. Shelley*, 1 Co. 93b, 76 Eng. Rep. 206 (C.B. 1581), although it was the common law of England prior to that time. Block, *The Rule in Shelley's Case in North Carolina*, 20 N.C.L. Rev. 49 (1941). The original objective of the rule was to

> "secure the feudal owners of lands against the loss of wardships and other 'rake offs' upon which the feudal lords lived at a time when land was the principal wealth and the foundation of dignity and influence. The rule is a highly technical one, for it contradicts the plain expression of the intent of the grantor or devisor . . . . It has led to much litigation, but the feudal lords needed such protection against the loss of those feudal incidents which would have been ousted if the heir of the grantee or devisee had taken as purchaser and not as successor." *Cohoon v. Upton*, 174 N.C. 88, 91-92, 93 S.E. 446, 448 (1917) (Clark, C.J., concurring).

Although feudal tenures were abolished in the seventeenth century, the rule in Shelley's Case continued in England and was brought to this country. *Cohoon v. Upton, supra.*

> "The rule at this time serves an excellent but an entirely different purpose in this State, in that it prevents the tying up of real estate by making possible its transfer one generation earlier, and also subjecting it to the payment of the debts of the first taker. It is doubtless for this reason that the rule has never been repealed in North Carolina." *Cohoon v. Upton, supra*, at 92, 93 S.E. at 448 (Clark, C.J. concurring), *quoted in Walker v. Butner*, 187 N.C. 535, 122 S.E. 301 (1924).

[1] In order for the rule in Shelley's Case to apply, it is generally said that (1) there must be an estate of freehold in the ancestor; (2) the ancestor must acquire that estate in the same instrument containing the limitation to his heirs; (3) the words "heirs" or "heirs of the body" must be used in the technical sense meaning an indefinite succession of persons, from generation to generation; (4) the two interests must be either both legal or both equitable; and (5) the limitation to the heirs must be a remainder in fee or in tail. *Benton v. Baucom*, 192 N.C. 630, 135 S.E. 629 (1926); *Hampton v. Griggs*, 184 N.C. 13, 113 S.E. 501 (1922).

The rule in Shelley's Case is a rule of law and not a rule of construction. *Hampton v. Griggs, supra.* Generally, the intent of the testator would not be relevant. Nevertheless,

> " '[t]he true question of intent would turn not upon the quantity of estate intended to be given to the ancestor, but upon the nature of the estate intended to be given to the heirs of his body.' The first question, then, to be decided is whether the words 'heirs' or 'heirs of the body' are used in their technical sense; and this is a preliminary question to be determined, in the first instance, under the ordinary principles of construction without regard to the rule in *Shelley's case.*" (Citation omitted.) *Hampton v. Griggs, supra,* at 16, 113 S.E. at 502.

The question presented to this Court, therefore, is what did the testator mean when he used the term "lawful heir or heirs of her body."

An ulterior limitation which provides for a substitute devise in the event the ancestor dies without leaving heirs can be one indication of the testator's intent.

> "When there is an ulterior limitation which provides that upon the happening of a given contingency, the estate is to be taken out of the first lines of descent and then put back into the same line, in a restricted manner, by giving it to some, but not to all, of those who presumptively would have shared in the estate as being potentially among the heirs general of the first taker, this circumstance may be used as one of the guides in ascertaining the paramount intention of the testator, and, with other indicia, it has been held sufficient to show that the words 'heirs' or 'heirs of the body' were not used in their technical sense." *Welch v. Gibson, supra,* at 691, 138 S.E. at 28.

This rule has been applied in a variety of cases. For instance, in *Edwards v. Faulkner,* 215 N.C. 586, 2 S.E. 2d 703 (1939), testatrix devised her property "to my nephew W. C. Edwards for his life time, and to his heirs if he dies without heirs, my property goes to my Bro. R. C. Edwards, and after his death to my nephews children H. T. Edwards, and R. L. Edwards." W. C. Edwards was the son of R. C. Edwards and the brother of R. L. Edwards. The

Court held that the rule in Shelley's Case did not apply because R. C. Edwards would be a potential heir of the first taker. The estate, therefore, would be taken out of the first line of descent and put back in a limited manner. Thus, the case fell within the rule set out in *Welch.*

In *Bird v. Gilliam,* 121 N.C. 326, 28 S.E. 489 (1897), the devise was "to my daughter, Mary, during her natural life, and give the same to the heirs of her body, but if my daughter, Mary, should not have no lawful heirs of her body, the said land at her death shall go back to my son." The Court held that the intent of the testator in using the words "heirs of her body" was shown by the phrase "but if my daughter, Mary, should not have no lawful heirs of her body" to mean issue. Thus the rule in Shelley's Case did not apply. *See also McRorie v. Creswell,* 273 N.C. 615, 160 S.E. 2d 681 (1968).

Again, in *Tynch v. Briggs,* 230 N.C. 603, 54 S.E. 2d 918 (1949), the testator devised land to his son "for the period of his natural life in remainder to his lawful heirs and in the event [my son] should die without lawful heirs then in remainder to my daughter." Since the daughter would be a lawful heir of the son, the son could not die without heirs in the general sense so long as his sister lived. Thus the Court held that the term "heirs" did not mean heirs in the general sense but rather a specific group of persons and, therefore, the rule in Shelley's Case did not apply. *See also Puckett v. Morgan,* 158 N.C. 344, 74 S.E. 15 (1912).

In *Clayton v. Burch,* 239 N.C. 386, 80 S.E. 2d 29 (1954), testator devised land to a grandson, J. W. Clayton, for his lifetime, "thence to his Body ars if he has Eney and if not then [to] . . . my Grand Sound Silus Daynel Clayton if he a living but if J. W. Clayton Shold hav a body hir it shall go to them down to the Tenth Jenerration . . . and if Ether one of my grand-Sons Shold Die [and] my grand Soun Stanley be living and thay Shold not leave a Body heir he Shal hav thair Share." The Court held that the term "Body heir" was used to describe certain persons and not in the general sense. Again, therefore, the rule in Shelley's Case was not applied.

[2]  We conclude that these holdings control the decision in the present case. The testator's daughter, Mary Vick, would be a lawful heir of the testator's granddaughter, Jesse Naomi Warren

who, therefore, could not die without lawful heirs in the general sense as long as Mary Vick lived. Thus, in the gift over, the estate was taken out of the first line of descent from Jesse Naomi Warren and placed back into the same line in a restricted manner by giving it to some but not to all of those who presumptively would have shared in the estate as the heirs in general of the first taker, Jesse Naomi Warren. It appears, therefore, that R. J. Ricks did not use the term "lawful heir or heirs of her body" in the technical sense but rather intended the term to mean the issue of Jesse Naomi Warren. The rule in Shelley's Case, consequently, does not apply.

Cases holding that the rule applies are distinguishable. For example, in *Morrisett v. Stevens*, 136 N.C. 160, 48 S.E. 661 (1904), the devise was to testator's brother for life and then to his heirs, but if he died without heirs of his body, then to Bettie Stevens. There was no indication that Bettie Stevens was related to the brother and, therefore, she would not be his heir. Again, in *Benton v. Baucom, supra,* the devise was to the testator's stepdaughter with the gift over to the testator's three children, who would not have been heirs of the stepdaughter.

In *Tyson v. Sinclair*, 138 N.C. 23, 50 S.E. 450 (1905), testator devised his land to his grandson "during the term of his natural life, then to the lawful heirs of his body in fee simple; on failing of such lawful heirs of his body, then to his right heirs in fee." The rule in Shelley's Case was applied to give the grandson a fee simple. The Court reasoned that the ulterior limitation was not to a restricted group, which would be included in the remainder to the "heirs of his body," (for example, "his next of kin") but rather was to a larger group which included the class named in the remainder. The limitation over, therefore, carried the estate as it would have gone by inheritance.

*Ray v. Ray*, 270 N.C. 715, 155 S.E. 2d 185 (1967), may also be distinguished. The testatrix devised the residue of her estate to her daughter for life, and at her death to the heirs of her body, if any; but if her daughter should predecease the testatrix without leaving heirs of her body, then the residue was to go to certain collateral relatives. The Court applied the rule in Shelley's Case and, therefore, the daughter took a fee tail estate converted to a fee simple estate by G.S. 41-1. The Court held that the rule of con-

struction enunciated in such cases as *Welch v. Gibson, surpa,* did not apply because there was no limitation over in the event the daughter should die without heirs *after* the death of the testatrix. The devise to the collateral relatives was a substitutional gift if the daughter predeceased the testatrix. Since the daughter survived, the devise to the collateral relatives was inoperative, and the rule in Shelley's Case applied.

We conclude that the judge erred when he entered summary judgment in favor of respondents. That judgment is vacated. Petitioners took the land in fee simple, subject only to the life estate of their mother. The case is remanded for proceedings not inconsistent with this determination.

Vacated and remanded.

Judges HEDRICK and CLARK concur.