F. A. PUCKETT v. JAMES MORGAN.

(Filed 13 March, 1912.)

1. **Wills—Devise—Estates in Remainder—Rule in Shelley's Case— Heirs of the Body—Interpretation.**

For a devise of lands to come within the meaning of the rule in *Shelley's case*, the subsequent estate must be limited to the heirs *qua* heirs of the first taker, or to the heirs or heirs of the body as an entire class or denomination of persons, and not merely to individuals embraced within that class.

2. **Estates in Remainder—Heirs of the Body—Descriptio Personarum —Interpretation.**

The rule in *Shelley's case* applies only when the word "heirs" or "heirs of the body" are used in their technical sense, and not when such terms are used as *descriptio personarum.*

3. **Same.**

The rule in *Shelley's case* will not apply to a devise of lands when, from the instrument, the intention of the devisor can reasonably and legitimately be construed as giving a life estate to the first taker with remainder over to designated persons of a certain class of heirs, as in this case to the "bodily heirs of" M.

4. **Same—Contingent Remainders.**

A devise to M., of certain described lands, "during her life, then to her bodily heirs, if any; but if she have none, back to her brothers and sisters": *Held,* M. took only a life estate in the lands, with remainder to her children living at the time of her death, the intention of the testator in the use of the term "bodily heirs," in connection with the other words employed in the devise, being descriptive of a certain class of heirs, upon failure of whom the remainder would go to the brothers and sisters of M.

Appeal from *Ferguson, J.,* at October Term, 1911, of Franklin.

This was a civil action to recover possession of certain land described in the complaint. The defendant demurred to the complaint. The court sustained the demurrer, and the plaintiff appealed.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Brown.*

*W. H. Yarborough, Jr., for plaintiff.*
*W. M. Person for defendant.*

BROWN, J.   In 1890, William Pace, the maternal grand-father of the plaintiff, died, leaving a will containing the following clause: "Item: I leave Martha Morgan, the wife of James Morgan, 48½ acres of land, known as the Rachael tract, on the east side, during her life, then to her bodily heirs, if any; but if she have none, back to her brothers and sisters."

Martha Morgan died in 1894, leaving two daughters, of whom the plaintiff is one, she having since intermarried with P. H. Puckett.   James Morgan, the husband of Martha Morgan, is still living and in possession of the land aforesaid, to recover which this suit is brought, claiming that he is entitled to a life estate in it as tenant by the curtesy.

The judge below was of opinion that under the rule in *Shelley's case* Mrs. Morgan took an estate in fee, and consequently her husband, the defendant, would be entitled as tenant by the curtesy to the possession of the land during his life.

It is needless to quote this ancient rule of law, so familiar to every student.   The original case was tried in the reign of Queen Elizabeth, and is reported in 1 Coke Rep., 104 A, and the statement of the rule there given is the one most generally adopted by text-writers.

While this dogma of the common law has been expounded and applied in hundreds of cases and by as many judges and text-writers, it seems to be generally agreed that in order to bring the rule into operation the subsequent estate must be limited to the heirs *qua* heirs of the first taker.   It must be given to the heirs or heirs of the body as an entire class or denomination of persons, and not merely to individuals embraced within such class.

The rule applies only when the word "heirs" or "heirs of the body" are used in their technical sense.   Where such terms are used as mere *descriptio personarum,* the rule has no application.

It is conceded that the rule in *Shelley's case* is a rule of law, and not of construction; yet whether the subsequent limitation is to the "technical heirs" of the person taking the prior freehold, or to a particular class of heirs, is necessarily a preliminary question of construction of the particular instrument under consideration.   *Parkhurst v. Harrower,* 142 Pa. St., 432.

As said by the Supreme Court of Pennsylvania, "To bring a devise within the rule in *Shelley's case,* the limitation must be to the heirs in fee or tail as *nomen collectivum* for the whole line of inheritable blood." *McCann v. McCann,* 197 Pa. St., 452.

While this rule seems to be applied with greater strictness in England than in this country, even there, when it appears from the context of the instrument that the words are used not in the technical sense, but as mere *descriptio personæ,* they are taken as words of purchase, and not of inheritance, and the rule does not apply. Theobald on Wills, 340-342, and cases there cited.

This principle is commented upon by *Judge Gaston* in these expressive words: "On the other hand, as the law will not entrap men by words incautiously used, if in the limitation of a remainder by any instrument or conveyance the phrase 'heirs' or 'heirs of the body' be expressed, but it is unequivocally seen that the limitation is not made to them in that character, but simply as a number or class of individuals thus attempted to be described, then the whole force of the phrase is restricted to this designation or description—it shall have the same operation as the words would have of which it is the representative; there is not in fact a limitation to 'heirs,' and of course there is no room for the application of the rule." *Allen v. Pass,* 20 N. C., 212.

This principle is recognized by *Chief Justice Shepherd,* in his often cited and learned opinion in *Starnes v. Hill,* 112 N. C., 18, when he says: "As the courts are astute in discovering the intention from the context of the conveyance, and *readily* give effect to every word from which such intention can reasonably and legitimately be inferred, it does not often occur that the application of the rule has the effect of subverting the real intention of the grantor or testator."

This exception to the application of the rule is also clearly stated by *Mr. Justice Hoke* in *Smith v. Procter,* 139 N. C., 322, and it has been recognized and given effect to in a number of cases in this Court in which it was held the rule in *Shelley's case* did not apply.

The citation of a few will suffice.  In *Rollins v. Keel,* 115 N. C., 68, the language was: "I give said lands to him, the said Joseph E. Rollins, him, his ·heirs and assigns, forever: *Provided, however,* that if the said Joseph E. Rollins shall die without leaving any lawful heir, then the same, after the expiration of the widowhood of my wife, shall enure to my brother, Reuben A. Rollins, his heirs and assigns, forever."

In *Francks v. Whitaker,* 116 N. C., 518, the language is: "I give and devise (real estate) to my beloved son, E. S. Francks, during his natural life, and after his death to his lawful heir or heirs, should he have any surviving him; but should he not have any lawful heir or heirs surviving him, then I give and devise the same to the children of my beloved son, W. W. Francks."  In the last case the Court· says that the words "lawful heir or heirs, should he have any surviving him," should be construed to mean "issue," and in all cases where the word "issue" is used, or it is clear that the words "heir or heirs of the body" were used in the sense of "issue," it has been held that the rule did not apply.

In *Bird v. Gilliam,* 121 N. C., 326, the language is: "I. loan the land whereon I now live to my daughter, Mary, during her natural life, and give the same to the heirs of her body; but if she should have no lawful heirs of her body, the said land at her death shall go back to my son, William."  This is another case in which "lawful heirs of the body" were construed to mean "issue."

In *May v. Lewis,* 132 N. C., 115, the language is: "I loan unto my son my entire interest in the tract of land,  . . . to be his during his natural life, and at his death I give said land to his heirs, if any, to be theirs in fee simple forever; and if he should die without heirs, said land to`revert back to his next of kin."  (Almost identical with the language in this case.)

In *Howell v. Knight,* 100 N. C., 254, the language is: "I lend to A, and if he hath a lawful heir begotten of his body, at his death, I give it to said heir or heirs; and if he dies without an heir, as aforesaid, I lend it to B."

The case of *Walker v. Taylor,* 144 N. C., 176, is not in conflict with these views, for in that case the remainder over was

to "the heirs at law of the testator's three daughters," and the context shows that the words were used in their technical sense, and not as *descriptio personœ*.

In the will now under consideration, we think the testator Pace has so explained and qualified the use of the words "her bodily heirs" as to plainly indicate that he meant the children or issue of his daughter Martha, and that the words are not employed in their legal or technical sense as representing heirs in general, but only as descriptive of a certain class of heirs.

The words "if any" would be quite appropriate to indicate the possibility of no issue, but not to indicate the contingency of no lawful heirs, for it is rarely possible for one to die without heirs, and not uncommon to die without children. Then again the reversion over is to a class of heirs at law who would certainly inherit in the event of a failure of issue.

It is also manifest that the testator did not intend that his daughter should take an estate in fee, for in express words he devised her an estate for life only, and the context shows that he intended that her children should take at her death, and in the event of her death without children, then that her brothers and sisters should receive the property.

We are of opinion that his Honor erred in sustaining the demurrer.

The cause is remanded with direction that the demurrer be overruled and the defendant answer over.

Reversed.