H. S. REID AND WIFE v. OSCAR NEAL.

(Filed 19 October, 1921.)

**1. Wills—Deeds and Conveyances—Rule in Shelley's Case.**

The rule in *Shelley's case* is one of law and not of construction, and where the language of the instrument brings the disposition of land within its operation, the intent of the grantor or devisor does not control.

**2. Same—Estates—Remainders—Defeasible Fee.**

A devise of land to testator's daughter for life, and at her death to her "bodily heirs, if any, and if none, to return to my estate," does not come within the meaning of the rule in *Shelley's case* so as to give to the daughter a fee-simple estate, in disregard of the intent of the testator; and will be construed, nothing else appearing, as giving her the fee simple, defeasible upon her dying without issue; and upon the happening of this contingency, with remainder over to the heirs general of the testator.

**3. Same—Testator's Intent—Interpretation.**

When permissible from the language employed, a will should be construed with reference to the meaning of every word and clause, to harmonize them with each other, when the effect is not inconsistent with the general intent and purpose of the testator as gathered from the entire instrument.

**4. Same—Remaindermen—"Estate."**

Where the rule in *Shelley's case* is inapplicable to a devise of lands, and it appears from the interpretation of a will that it was the intent of the testator to give his daughter a fee simple, defeasible upon her dying without issue, in which event it was "to return to his estate," the limitation over to "his estate" is not void for uncertainty, the intent of the testator being that it return to his estate for distribution among his general heirs.

**5. Wills—Estates—Remaindermen—Heirs at Law.**

In accordance with the intent of the testator, as gathered from the words he has used in his will, the word "estate" may be interpreted to mean the quantity of interest to be taken, or the thing devised, or the circumstances or conditions in which the owner stands in regard to his property, or the person or persons to take it; and may refer to personal or real property, or exclude real property.

**6. Wills—Residuary Clauses—Purpose.**

The purpose of a residuary clause in a will is to provide for the ultimate disposition of legacies and devises which are void, or have lapsed, or have been refused; and, in the absence of an effective residuary clause, a lapsed or void legacy or devise will go to the next of kin, or to the heirs of the testator, as in case of intestacy.

APPEAL by defendant from *Connor, J.,* at July Term, 1921, of WILSON.

Submission of controversy without action. C. S., ch. 12, art. 25.

## STATEMENT OF FACTS.

H. S. Reid and wife, Laura Reid, and Oscar Neal, desiring to submit a question in difference, which might be the subject of a civil action, have agreed upon the following statement of facts, upon which the controversy depends, and present the controversy for submission to this court for determination:

1. Laura Reid is the daughter of Ishmael Wilder, and H. S. Reid is her husband.

2. Ishmael Wilder died domiciled in the county of Wilson, North Carolina, in February, 1917, having first made and published his last will and testament, by the third item of which he devised to his daughter, Laura Reid, certain lands, the following being a true and correct copy thereof, to wit:

"I lend to my daughter, Laura Reid, 59½ acres, the remainder of my land, to include the house where Joe Barnes now lives, to her during her natural life, and at her death I give it to her bodily heirs, if any, and if none to return to my estate." The said last will and testament after having been duly proven according to law, was admitted to probate and recorded in Book of Wills No. 6, page 1, in the office of the clerk of the Superior Court of Wilson County.

3. That no other item or part of said will deals in any manner with the lands devised unto Laura Reid, and there is no residuary clause therein.

4. That after the death of Ishmael Wilder the devisees caused the lands to be surveyed by J. T. Revell, surveyor, on 20 April, 1920, and the lands devised unto Laura Reid by the third item of said last will and testament are described as follows:

"Beginning at a stake, C. E. Brame's corner, and runs thence north 3 degrees east 283 poles to a stake, H. G. Wilder's corner; thence north 87 degrees west 33½ poles to a stake in Hinnant's line, H. G. Wilder's corner; thence south 3 degrees west 283 poles to a stake in Brame's line; thence 87 degrees east 33½ poles to the beginning, containing 59½ acres, as surveyed by John T. Revell."

5. That H. S. Reid and his wife, Laura Reid, have contracted and agreed to sell the said 59½ acres of land to Oscar Neal, and Oscar Neal has agreed to purchase the same and to pay therefor the sum of $10,000 upon the render to him of a good and sufficient deed conveying unto him the said lands in fee simple.

6. That H. S. Reid and wife, Laura Reid, have tendered unto the said Oscar Neal a deed, properly executed, conveying the said lands unto him and demanding the payment of the purchase price, according to the terms of the contract, but the said Oscar Neal declines to accept the said deed and pay the purchase price.

7. H. S. Reid and wife, Laura Reid, contend that under the terms of the will of Ishmael Wilder the said Laura Reid is seized in fee simple of the said land. Oscar Neal contends that under the terms of the will of Ishmael Wilder the said Laura Reid is not seized of a fee simple estate therein and she and her husband cannot convey the same to him in fee simple.

Wherefore, the said parties submit to this court the determination of the question in difference between them, and if the said court shall be of the opinion that the said Laura Reid is seized of a fee simple estate in and to the said lands, then judgment shall be rendered by the said court requiring the said Oscar Neal to accept the said lands and pay the purchase price according to the contract; but if the court shall be of opinion that the said Laura Reid is not seized of fee simple estate in said lands, then judgment shall be rendered accordingly.

Judge George W. Connor rendered the following judgment:

## JUDGMENT.

This controversy without action coming on to be heard before the undersigned resident judge of the Second Judicial District, in which the county of Wilson is located, upon the agreed statement of facts submitted, and it appearing to the court that the said agreed statement of facts is properly verified under the statute and, after giving the matter consideration, the court being of the opinion that Laura Reid is seized in fee simple of the lands devised unto her by the last will and testament of Ishmael Wilder:

It is therefore, upon motion of Connor and Hill, attorneys for H. S. Reid and wife, Laura Reid, ordered, decreed and adjudged that the said Oscar Neal accept a deed tendered to him by the said H. S. Reid and wife, Laura Reid, and pay unto them purchase price agreed upon, to wit, $10,000, and the costs of this proceeding to be taxed by the clerk.

The defendant excepted and appealed.

*Connor & Hill for plaintiffs.*
*E. J. Barnes for defendant.*

ADAMS, J. In February, 1917, Ishmael Wilder died domiciled in the county of Wilson, having made his last will and testament, which has been duly proved and probated. Item three is as follows:

"I lend to my daughter, Laura Reid, 59½ acres, the remainder of my land, to include the house where Joe Barnes now lives, to her during her natural life, and at her death I give it to her bodily heirs, if any, and if none, to return to my estate."

The plaintiffs contend that the devise over—"to return to my estate"—is void; that the word "estate" refers, not to persons, but to the condition or circumstances in which the testator stood with reference to his property—the nature and extent of his interest; that there is confusing uncertainty as to the persons who might succeed to the title upon the failure of the *feme* plaintiff's "bodily heirs," and that the devisee, Laura Reid, has an estate in fee simple under the rule in *Shelley's case.* It therefore becomes necessary to decide whether the rule in *Shelley's case* applies, and if it does not, to construe the devise under which the *feme* plaintiff claims title to the land.

This noted rule, a prolific source of litigation, is stated by *Coke* as follows: "When an ancestor, by any gift of conveyance, taketh an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs in fee or in tail, the word heirs is a word of limitation of the estate, and not a word of purchase." 1 Coke, 104. In Kent's Commentaries, as a citation of Preston's definition, the rule is given in this language: "Where a person takes an estate of freehold, legally or equitably, under a deed, or will, or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of any interest of the same legal or equitable quality to his heirs, or heirs of his body, as a class of persons to take in succession from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate." 4 Kent Com. (215).

It is held with practical unanimity that the principle stated is not a rule of construction, but a rule of law. If the language used in a particular instrument brings the case within the operation of the rule, the intention of the grantor or devisor does not control.

In *Nobles v. Nobles,* 177 N. C., 245, *Hoke, J.,* speaking for this Court, said: "The rule in question has always been recognized with us, and a perusal of these and other like cases will disclose that when the terms of the instrument by correct interpretation convey the estate in remainder to the heirs of the first taker as a class, 'to take in succession from generation to generation' to the same persons as those who would take as inheritors under our canons of descent and in the same quantity, the principle prevails as a rule of property both in deeds and wills, and regardless of any particular intent to the contrary otherwise appearing in the instrument."

This Court has had occasion from time to time to construe divers instruments in which the language used bears striking similarity to the language in the devise under consideration. Recourse to former adjudications may, in the present instance, serve to direct us to the correct conclusion.

In *Francks v. Whitaker,* 116 N. C., 518, the devise was in these words: "I give and devise (real estate) to my beloved son E. S. F., during his natural life, and after his death to his lawful heir or heirs, should he have any surviving him, but should he not have any lawful heir or heirs surviving him, then I give and devise the same to the children of my beloved son W. W. F." The Court held that the proper construction of the will is as if it read: "I give and devise to my beloved son E. S. F., during his natural life, and after his death to his issue, should he have any surviving him, but should he not leave issue, then I give and devise the same to the children of my beloved son W. W. F."

In *Bird v. Gilliam,* 121 N. C., 327, the devise was "to my daughter Mary during her natural life, and give the same to the heirs of her body, but if my daughter Mary should not have no lawful heirs of her body, the said land at her death shall go back to my son William and the heirs of his body."

The Court said: "The rule in *Shelley's case* does not apply here. If there had been no words explanatory of the words 'heirs of her body,' in connection with the estate devised to Mary, she would, under the rule, have taken the fee. *Nichols v. Gladden,* 117 N. C., 497. But there were such explanatory words where the testator said, 'but if my daughter Mary should not have no lawful heirs of her body, the said land,' etc. Such explanatory words have been construed by this Court to mean issue. *Rollins v. Keel,* 115 N. C., 68. Mary, then, took only a life estate."

The case of *May v. Lewis,* 132 N. C., 115, is of similar import. There the devise was in the following words: "I loan unto my son, B. M., my entire interest in the tract of land, to be his during his natural life, and at his death, I give said land to his heirs, if any, to be theirs in fee simple forever; and if he should die without heirs, said land to revert back to his next of kin." The Court held that the son took a life estate, saying that "any words added to the limitation which carry the estate to any other person, in any other manner or in any other quality than the canons of descent provide, will take the case out of the operation of the 'rule,' and limit the interest of the first taker to an estate for his life."

*Puckett v. Morgan,* 158 N. C., 344, presents the case of a devise, the terms of which, excepting the last clause, are substantially identical with the language used in this case: "I leave to Martha Morgan, the wife of James Morgan, 48½ acres of land, known as the Rachael tract, on the east side, during her life, then to her bodily heirs, if any; but if she have none, back to her brothers and sisters." Martha Morgan died in 1894, leaving two daughters, one of whom was the plaintiff, who had intermarried with P. H. Puckett. James Morgan, the surviving hus-

band of Martha, was in possession of the land claiming a life estate as tenant by the curtesy. Upon demurrer, the judge held that under *Shelley's case* Mrs. Morgan took an estate in fee, and that the defendant was entitled to the possession of the land during his life. But in the opinion of this Court *Brown, J.,* said: "It is also manifest that the testator did not intend that his daughter should take an estate in fee, for in express words he devised her an estate for life only, and the context shows that he intended that her children should take at her death, and in the event of her death without children, then that her brothers and sisters should receive the property."

These precedents are maintained in the more recent decisions of this Court. *Blackledge v. Simmons,* 180 N. C., 535; *Wallace v. Wallace,* 181 N. C., 158. In the former case there was a devise of real estate to the testator's daughter for life, and at her death unto the heirs of her body lawfully begotten, with a provision that in the event of her dying without heirs of her body, the land should go to the testator's heirs at law. *Walker, J.,* citing numerous decisions bearing upon the question, concluded that the words "heirs of her body" should not be construed in their technical sense, as denoting an entire class of heirs to take in indefinite succession, but should be construed as meaning the children of the testator's designated child. Accordingly it was held that the first taker acquired a life estate and the children an estate in fee as purchasers. In the latter case, Elisha Wallace and his wife executed a deed conveying to C. A. Wallace a tract of land, to hold during his natural life, subject to the support and protection of the grantors during their lifetime. In the deed is this additional provision: "And then after the death of the above said C. A. Wallace, then said land to descend in fee simple to his bodily heirs, if any, and if none, to go to his next of kin." C. A. Wallace died without the birth of issue, and made his will devising the land for life to his widow Selina, "and at her death to the children of R. I. Wallace." The representatives and children of the deceased brothers and sisters of C. A. Wallace instituted a special proceeding for partition, making parties his widow and his surviving brothers and sisters. The widow and the petitioners contended that C. A. Wallace took an estate in fee simple, while the defendants insisted that he took only a life estate, and that upon his death they acquired title to the land by virtue of the limitation to the next of kin. In an opinion reviewing the authorities, *Hoke, J.,* said: "We must hold that C. A. Wallace took only a life estate under the deed from his father, and that under the ulterior limitation to his next of kin the property belongs to his surviving brothers and sisters to the exclusion of the widow and his nephews and nieces."

The prevailing doctrine drawn from the decisions in this jurisdiction is crystallized in *Wallace v. Wallace* in the following paragraph: "From these and other authorities it will be noted that in order to an application of the rule in *Shelley's case* (being contrary as it is to the expressed will of the grantor that the first taker should have a life estate only), the words 'heirs' or 'heirs of the body' must be taken in their technical sense carrying the estate to the entire line of heirs, and at this time and in this jurisdiction to hold as inheritors under our canons of descent, and if it appears by correct construction that these words are not used in that sense, but only as words designating certain persons or confining the inheritance to a restricted class of heirs, the rule does not apply, and the ancestor or first taker will be held to have acquired only a life estate, according to the express words of the instrument."

But the plaintiffs insist that the instruments construed in these decisions may be differentiated, in that the ulterior devise in the instant case, limited not to a person or class of persons, but to "my estate" is void because indefinite and uncertain. The immediate question, then, is this: "What is the proper legal construction of the words "if any, and if none, to return to my estate?"

It is true that the rule in *Shelley's case* is a rule of law and not of construction, but whether the ulterior devise is valid, or whether the limitation is to the "technical heirs" of the first taker, or to a particular class of heirs, is essentially a preliminary question as to the construction of the particular instrument under consideration; and the intent of the grantor or devisor is to be disregarded only where a proper interpretation of his language brings the particular case within the rule. *Puckett v. Morgan, supra; Blackledge v. Simmons, supra.* In construing this clause—"if any, and if none, to return to my estate"—the intent of the testator must be sought unless we hold as a matter of law that the clause is void upon its face. If the words referred to are susceptible of any construction which is consistent with the validity of the will in its entirety, we cannot declare them void without doing violence to one of the cardinal rules of construction. A will should be construed so as to give effect to every word and every clause, and to harmonize the several clauses, provided the effect is not inconsistent with the general intent and purpose of the testator as gathered from the entire instrument. 30 A. & E. (2 ed.), 664; Gardner on Wills, 373; *Satterwaite v. Wilkinson,* 173 N. C., 39.

It cannot be successfully urged that the word "estate" makes the last limitation void for uncertainty. This word has more than one meaning, and is susceptible of more than one construction. Anciently confined to land, it has been enlarged so as to embrace property of every descrip-

tion. Enumerated with words which are descriptive of personal or chattel interests, it may exclude real estate altogether. It may denote the quantity of interest, or the thing devised, or the condition or circumstances in which the owner stands in regard to his property. 3 W. & P., 2475 *et seq.* Also, it has been construed as meaning a person. *Bennett v. State,* 36 S. W. R., 948. Its legal signification must be ascertained from the context, or an examination of all the provisions of the instrument in which it appears. In *Downing v. Grigsby,* 96 N. E. R., 513, it is said that the ordinary meaning of the words "revert to my estate" is, "return to the aggregate of all the property which I may leave at my death."

It will be observed that in the last will and testament of Ishmael Wilder there is no residuary clause—in fact no clause, excepting item three—which purports to deal with the land in question.

If Laura Reid die without bodily heirs, or children, or "issue" (*Francks v. Whitaker, supra; Bird v. Gilliam, supra;* C. S., 1739), and effect be given to the ulterior limitation, in whom will the title vest? The office of the residuary clause in a will is to provide for the ultimate disposition of legacies and devises which are void, or have lapsed, or have been refused. In the absence of an effective residuary clause, a lapsed or void legacy or devise will go to the next of kin, or to the heirs of the testator, as in case of intestacy. *Johnson v. Johnson,* 38 N. C., 426; *Winston v. Webb,* 62 N. C., 1; *Robinson v. McIver,* 63 N. C., 645; *Twitty v. Martin,* 90 N. C., 643.

After a careful consideration of the authorities we conclude that effect must be given to the ulterior limitation—"and if none, to return to my estate"; that the testator gave to his daughter Laura a life estate with remainder in fee defeasible upon the failure of her "bodily heirs" (*Kirkman v. Smith,* 174 N. C., 603), and that the devise in item three should be construed as if it read: "I devise to my daughter Laura Reid 59½ acres, the remainder of my land, to include the house where Joe Barnes now lives, to her during her natural life, and at her death I give it to her issue, if any, and if none, to my heirs"—*i. e.,* in the absence of a residuary clause, to those who would have been entitled had the testator died intestate. It is obvious, then, that under the will of her father Laura Reid takes only a life estate, and that the plaintiffs cannot convey the land in fee simple. The judgment is therefore reversed.

Reversed.