In the Matter of the Estate of FREDERICK REED BILLMAN, Deceased.*

Surrogate's Court, New York County, October 30, 1940.

*J. Hutton Hinch*, for the executors.

*John F. Lynn*, for Ida Aurand, distributee.

*Smart & McAlpin*, for Helen Wolfe and G. Donald Cook, as administrator, etc., of Clara I. Cook.

*Richard P. Crenshaw, Jr.*, for Carrie Alsbach and others, individually, respondents.

FOLEY, S. Certain of the legatees have moved for a reargument of my decision on the question of construction of the will (N. Y.

---

* Affd., 261 App. Div. 957.

L. J. Aug. 8, 1940, p. 312) in order to permit them to submit extrinsic evidence and be heard on the argument. The parties interested in the question have agreed upon a written stipulation of facts and have consented to submit the matter upon the agreed facts and briefs without further hearing.

The motion for reargument has, in effect, been granted for the reason that the surrogate has carefully considered all of the facts submitted as well as the extensive briefs of counsel. No reason has been developed, however, to modify in any respect the conclusion heretofore reached by me. My former decision, therefore, must stand. In view of certain misconceptions of counsel, it appears to be desirable to enlarge upon the grounds of my original decision.

Frederick Reed Billman died leaving a will which had been executed on February 1, 1937. The will is on an ordinary stationer's form with the testamentary provisions typewritten, and it was presumably drawn by the testator himself. The witnesses, like the testator, were ordinary laymen, and no lawyer was present at its execution. The will in many of its provisions manifests a lack of skill on the part of the draftsman.

The particular portion that requires a judicial construction is the thirteenth paragraph wherein the testator has provided as follows: " All the rest, residue and remainder of my Estate, of whatsoever kind, nature and description and wheresoever situated, I give, devise and bequeath to my Estate." This provision is the occasion for the dispute between certain of the legatees named in the will, on the one hand, and the distributees by intestacy of the testator, on the other. The former contend that in the use of this language it was the testator's intention to bequeath his residuary estate to the legatees theretofore mentioned in his will in the proportion that each legacy bore to the aggregate amount of all of the legacies. The distributees maintain that the clause is void and has no meaning, and that the property, therefore, passes as intestate property.

In the analysis of the disputed clause it is necessary to advert briefly to the other provisions of the will. In the first paragraph testator gave to his executors $5,000 in trust for the benefit of his aunt, Mrs. Helen Wolf, with directions that she was to receive $50 a month until she shall have received the sum of $5,000 with any accumulated interest. In the event that she should die before him or " before receiving this amount," then the fund, or any portion remaining unpaid, " shall revert to and become part of my residuary estate." A trust in the sum of $6,000 was created in the second paragraph for another aunt, Mrs. Ida Aurand, with directions that she was to receive $60 a month. The terms of the trust were otherwise identical with those in the first paragraph. In the next three paragraphs he gave legacies to three named cousins, two of

$1,500 and one of $2,000, and provided in each case that in the event that the named legatee died before him or before receiving this amount, it should be paid to the other two. Then followed several general legacies to friends; to Clarence H. Robison, Morgan L. Parry and Arthur H. Loehfelm, $500 each; to Maude L. Boice, the sum of $500, provided that she accompanied his body back to Williamsport, Pa., for burial; to Edna M. Turner, a like sum " as her expenses " under similar conditions. To Miss Turner he also bequeathed all of his personal effects and a legacy of $18,000. He described her as his " beloved *fiancee* and true friend." In the twelfth paragraph he provided: " In the event that any of the above named legatees shall die before me, excepting the legatees mentioned in the third, fourth and fifth paragraphs of this Will [namely, the three cousins] then such sum or sums so bequeathed to them shall revert to and become part of my residuary estate." Then follows the disputed residuary clause.

At the time of his death the testator's distributees were three aunts, two of whom are named in the will and one, Clara Cook, of whom no mention is made. All were advanced in years, and at the time of the execution of the will the youngest was seventy-one years of age and the eldest, seventy-six years. The latter, Clara Cook, has since died, and her administrator appears in behalf of her estate.

Opposed to the distributees in this proceeding are five of the pecuniary legatees, namely, Miss Turner, Loehfelm and the three cousins. They contend that the residuary clause should be construed to mean that there is to be added to each legacy a part of the residue in the proportion that the stated amount of the legacy bears to the total amount of the legacies. Under their construction the share of the two aunts would be added to the trust for their benefit and the shares of the others would pass to them outright. In this calculation they seek to exclude from participation the bequest of $500 to Miss Turner for expenses in accompanying the body for burial and the bequest of the personal effects.

I have carefully considered the will as a whole, and the individual provisions, as well as the relevant attending circumstances, in an endeavor to ascertain what the testator intended by the terms used in the residuary clause. There is no basis at all, either in any language in the will or in the extrinsic evidence, for ascribing to the testator an intention to distribute his residuary estate among the legatees previously mentioned in his will. If the testator ever had any such purpose in his mind, it would have been so easy to manifest it by a very simple statement. Typical of this form of disposition is a gift of the residue " to each and every of my legatees hereinbefore named   *   *   *   in the proportion in which his, her

or their specified legacies hereinbefore named and bequeathed bear to each other." (*Weeks* v. *Cornell*, 104 N. Y. 325, 329.) Such a disposition has been expressed in wills in varying ways. (*Leask* v. *Richards*, 188 N. Y. 291; *Matter of Logan*, 131 id. 456; *Matter of White*, 125 id. 544; *Matter of Woodward*, 117 id. 522.) In the other provisions of the will the testator succeeded in making his desires perfectly evident in spite of his lack of legal training. Had he desired his legatees to·share in his residuary estate, it could reasonably be expected that he would have expressed that purpose with sufficient clarity although not, perhaps, with the technique of an experienced draftsman. In this connection it is interesting to observe that at certain points in their argument they ascribe to the testator a deftness and precision in the employment of words which they must deny to him in the drafting of the residuary clause.

The legatees seek to first establish the premise that the testator did not intend to leave his residuary estate to the three ladies who at the time of his death were actually his distributees. They point to the advanced age of these persons, the fact that the two mentioned in the will were not in need of maintenance and support, the provisions in the will that permitted only monthly payments to them, and the directions as to the unexpended balance. Great emphasis is placed upon the words " shall revert to " my residuary estate, both as used in the trust provisions and in the clause relating to lapsed legacies. In spite of these arguments, they request a construction that would permit proportionate shares of the residue to be added to both of the trust funds. Their argument is then directed to the disputed clause where attention is focused upon certain words used therein, which, they contend, indicate an intention on the part of the testator to make a gift to some persons or group, and not to die intestate. From this they attempt to reach the conclusion that the previously mentioned legatees were the objects of the gift of the residuary estate. Neither sound reason nor authority will permit such a conclusion.

In construing a provision in a will the court is not at liberty to speculate as to the testator's intention, nor to fill in gaps in the testamentary scheme. " The effect to be given to testamentary language cannot depend upon conjecture, much less upon judicial caprice." (*Matter of Logan*, 131 N. Y. 456, 461.) The court seeks the intention of the testator, and it must find it in the words selected by him to express that intent, viewed in the light of the relevant attending circumstances.

A gift of the residue to " my Estate " might ordinarily be interpreted as a gift to those persons who would be entitled to the estate if the decedent had died intestate. Where the circumstances have

permitted, it has been so held. (*Matter of Weissmann*, 137 Misc. 113; affd., 232 App. Div. 698; *Reid* v. *Neal*, 182 N. C. 192; 108 S. E. 769.) In the *Weissmann* case (*supra*) it was said: " He is thus shown to have had intestate succession clearly in mind, and it seems unquestionable to the court that it was such intestate succession which he had in mind when he used the disputed phrase " (p. 118). Seldom are two wills ever alike, and extrinsic evidence bearing upon the question of intent will differ in various cases, so that the meaning to be ascribed to such words can never be crystallized into an unchangeable formula.

In insurance policies where the beneficiary has been described as " the estate " of a named person, various interpretations have been placed upon the words. The phrase might include an executor or administrator, or a trustee, or those persons who had succeeded to his title. (*Weed* v. *London & L. Fire Ins. Co.*, 116 N. Y. 106.) It might logically be construed to mean the persons who would take under an effective will through the executor or trustee. (*Quick* v. *Quick*, 161 App. Div. 878.) The word " estate " may be used " to represent the interest of administrators in personal estate, or the interest of widow and heirs in real estate, or the interest of all these in both personal and real estate." (*Weed* v. *Hamburg Bremen Fire Ins. Co.*, 133 N. Y. 394, 401.)

In the present proceeding it is immaterial whether the residuary estate passes to the distributees by virtue of a direct gift under testamentary expressions of intent, or as intestate property by the ineffectiveness of the disposition of his " estate." (*Matter of Weissmann, supra.*) There is no difference in result. In either event, the Statute of Distribution is the standard of division and the same persons are entitled to take. In the original decision in this matter the surrogate upheld the conclusion ¡of intestacy. Since the ultimate takers are the same persons, the difference is academic. The testator here may have accomplished by the general provisions of his will all that he intended. As to the rest he may have had no particular design. " Let it go as the law directs." (*Matter of Bump*, 234 N. Y. 60, 66.) " The statute of distribution governs in all cases where there is no will, and where there is one, and the testator's intention is in doubt, the statute is a safe guide." (*New York Life Ins. & Trust Co.* v. *Winthrop*, 237 N. Y. 93, 108, citing *Lyon* v. *Acker*, 33 Conn. 222, 223.)

Submit decree on notice pursuant to my original decision directing payment of the residuary fund in equal parts to the estate of the deceased next of kin and to the surviving next of kin, and settling the account accordingly.