BURLEY CLAYTON AND WIFE, CORINNA CLAYTON, LACY CLAYTON AND WIFE, ELIZABETH COUCH CLAYTON, BERNICE CLAYTON ASHBY AND HUSBAND, MELVIN McGRUDER ASHBY, BEVELY CLAYTON HILL AND HUSBAND, WELDON DELONEY HILL, PHILLIP CLAYTON BY HIS NEXT FRIEND, SILAS DANIEL CLAYTON, MONA CLAYTON PASS AND HUSBAND, JOHN PASS, ABNER W. CLAYTON, BARBARA CLAYTON AND WILLIAM GALE CLAYTON BY THEIR NEXT FRIEND, MONA FREDERICK CLAYTON, v. Q. L. BURCH AND WIFE, ONIE B. BURCH.

(Filed 29 January, 1954.)

**1. Wills § 31—**

When necessary to accomplish the testator's intent as ascertained from the context of the will, the court may disregard improper use of capital letters, punctuation, misspelling and grammatical inaccuracies, especially

where the will is written by an unlearned person. Thus, to this end, the words "if not then *if* my Grand Sound" may be changed to read "if not then *to* my Grand Sound" and the words "if Ether one of my grand-Sons shold die *any* my grand Soun Stanley be living" may be changed to read "if Ether one of my grand Sons shold die *and* my gran Sound Stanley be living," etc.

**2. Same—**

Testator's intent must be given effect as it is set forth in his will, since the written and not the unexpressed intent must control.

**3. Wills § 33b—Where "heirs" is used as descriptio personarum and not in technical sense, rule in Shelley's case does not apply.**

A devise to a named grandson of testator for life and to his bodily heirs, but if he should die without heirs then to another named grandson, with further provision that if either one of these grandsons should die without leaving a bodily heir, a third named grandson should have their share, *is held* to devise a life estate only to the first named grandson, and not a fee defeasible upon his death without issue, it being apparent that testator used the words "bodily heirs" as *descriptio personarum* and not in the technical sense so that the words mean that if the first named grandson should die without "children" the land should be taken out of the first line of descent and then put back into the same line in a restricted manner and therefore the rule in *Shelley's case* does not apply.

**4. Wills § 33i—**

A provision annexed to a devise that the land devised should not be sold for any purpose whatsoever is void, but such provision does not defeat the estate to which it is annexed.

**5. Wills § 33h—**

A provision in a will that the land devised to a named person for life should go to the life tenant's heirs "to the Tenth Jenerration" is void as being within the rule against perpetuities.

APPEAL by defendants from *Carr, J.,* August Mixed Term 1953 of PERSON.

Controversy without action submitted to the court, pursuant to provisions of G.S. 1-250, for decision and determination. A summation of the agreed statement of facts necessary for decision of the question presented follows:

*One.* John S. Clayton died testate 4 December 1916 seized in fee simple and in possession of the lands in controversy.

*Two.* His will was duly probated in common form on 27 May 1925, and is recorded in the office of the Clerk of the Superior Court of Person County in Will Book 21, pp. 63-64. These are the material parts of the will: "I give to My Beloved Wife Euphenia Clayton, all of my Estate Real and personal her life time, or my widow hood, and at hear deth or hear deth or marrig then I give to My Grand Sound John W. Clayton the

Land on the west side of my home tract Beginen in the Midel of the road and Runing half way beteen too Tobacco Barnes on the North Side of the Road Leeding from Roxboro to Sural thence a Strat line to the hedero to a Rock Corner the Rebacer Barrett tract thence Down Sed line to the neaxt Rock Corner John W. Wilkerson and my corner to have and to hold his life time, thence to his Body ars if he has Eney and if not then if my Grand Sound Silus Daynel Clayton if he a living but if J. W. Clayton Shold hav a body hir it Shall go to them down to the Tenth Jenerration and shal never be Sold for Eney pupus what Sover . . . and if Ether one of my grand-Sons Shold Die any my grand Soun Stanley be living and thay Shold not leave a Body heir he Shal hav thair Share."

*Three.* Euphenia Clayton did not remarry, and died 23 August 1933.

*Four.* When John S. Clayton died he had eight granddaughters and four grandsons—John W. Clayton, Silas Daniel Clayton, Stanley Clayton and Jack Clayton, who was born the day his grandfather died. All these grandchildren are living, except John W. Clayton, and one granddaughter.

*Five.* John Clayton was first married to Annie Mae Oakley who died 1 August 1926. By this marriage he had five children, all now over 21 years of age. He was married second to Mona Frederick, and of this marriage there are four children, all living.

*Six.* On 28 August 1928 John W. Clayton and wife, Mona, executed and delivered a deed of trust to R. P. Burns, Trustee, covering the land devised to him by his grandfather's will to secure an indebtedness of John W. Clayton to W. C. Bullock, Trustee for Mrs. John Bullock in the sum of $1,500.00, as evidenced by his bond in that amount which he had executed and delivered to W. C. Bullock, Trustee; which deed of trust is properly recorded in the Public Registry of Person County.

*Seven.* R. P. Burns foreclosed the deed of trust in November 1935 and by *mesne* conveyances O. L. Burch acquired a deed dated 11 December 1943 for said land from W. C. Bullock, Trustee, which deed is recorded in the Person County Registry in Book 54, p. 462, and purports to convey the fee to the land in controversy to him: O. L. Burch has been in possession of the land since, and is still in possession.

*Eight.* From the date of John S. Clayton's death until Euphenia Clayton's death on 23 August 1933, either she or John W. Clayton were in possession of the land in controversy.

*Nine.* John W. Clayton was killed in an automobile wreck 3 April 1949. There have been no conveyances of the land in controversy by his children and they have never been in possession.

*Ten.* All the children of John W. Clayton are plaintiffs and O. L. Burch and wife are defendants.

This question was presented to the lower court for decision: "Under the foregoing statement of facts is title to the property described therein presently vested solely in O. L. Burch or is it vested equally in the nine children of John W. Clayton as tenants in common?"

The lower court entered judgment deciding (1) That title to the land is vested equally in fee simple in the nine children of John W. Clayton as tenants in common and that they are entitled to immediate possession; (2) that the provision in the will restricting the land devised "down to the tenth generation" is void as coming within the rule against perpetuities, but that the prior estate to which it is annexed is valid and that the plaintiffs take a fee simple title to the land; (3) that the provision in the will that the land devised "shall never be sold for any purpose whatsoever," is void as against public policy; that such invalid provision does not defeat the estate to which it is annexed, but the estate is a valid subsisting estate and the invalid provision is rejected.

To the judgment entered the defendants excepted and appealed.

*Davis & Davis for Plaintiffs, Appellees.*

*Burns & Long, R. B. Dawes, and Royster & Royster for Defendants, Appellants.*

PARKER, J.  When necessary to accomplish the testator's intent as ascertained from the context of the will, the court may disregard improper use of capital letters, punctuation, misspelling and grammatical inaccuracies, especially where the will is written by an unlearned person.  *Bell v. Thurston,* 214 N.C. 231, 199 S.E. 93; *Mewborn v. Mewborn, ante,* p. 284, 79 S.E. 2d 398.

To carry out the testator's intent it is apparent that the words in the will "if not then *if* my Grand Sound Silus Daynel Clayton if he a living" should read "if not then *to* my Grand Sound Silus Daynel Clayton if he a living."  (Italics ours.)  The appellants contend this on p. 7 of their brief.  It is also apparent that the words in the will "if Ether one of my grand-Sons Shold die *any* my grand Soun Stanley be living, etc." should read "if Ether one of my Grand Sons Shold die *and* my Gran Sound Stanley be living, etc."  (Italics ours.)

This question is presented: Was John W. Clayton devised a life estate in the land in controversy or a defeasible fee?  The answer must be sought in the testator's intent as set forth in his will; for under the accepted rules of construction the written and not the unexpressed intent must control.  *West v. Murphy,* 197 N.C. 488, 149 S.E. 731.  "It is elementary that a will must be construed as it is written."  *Lide v. Mears,* 231 N.C. 111, 56 S.E. 2d 404.

In *West v. Murphy, supra,* the testator devised land to his granddaughter, Bertie Hill, so long as she should live, and if no children, then to her brother, Frank Hill, the granddaughter being a child at the date of the will. The granddaughter died leaving her surviving a child. We quote from the opinion. "A gift to a person absolutely, with a provision that if he die without leaving children the property shall go to another, vests in the primary devisee a common-law fee conditional, which is defeasible upon his death without leaving a child. *Sadler v. Wilson,* 40 N.C. 296; *Whitfield v. Garris, supra* (134 N.C. 24); *Dawson v. Ennett,* 151 N.C. 543; *Perrett v. Bird,* 152 N.C. 220; *Smith v. Lumber Co.,* 155 N.C. 389. In the cited cases the devisees took an estate in fee defeasible upon the happening of a subsequent event; but the principle upon which they are founded has no application to devises in which by the terms of the will the first taker acquires only a life estate. To this rule there is an exception. A life estate thus given may be enlarged into a fee when the particular disposition is to be determined, not as a rule of construction, but, as in *Shelley's case,* as a rule of law or a rule of property, regardless of an intent to the contrary appearing in the will. *Reid v. Neal,* 182 N.C. 192; *Nobles v. Nobles,* 177 N.C. 243. But as shown in many of our decisions the exceptions serve to clarify and impress the rule. For example, a father having devised to his daughter Mary an estate during her natural life and to the heirs of her body, on condition if she had no heirs of her body the estate should go to his son, it was held that Mary took a life estate. *Bird v. Gilliam,* 121 N.C. 326. In *May v. Lewis,* 132 N.C. 115, it was held that Benjamin May was given a life estate by the following devise: 'I loan unto my son Benjamin May my entire interest in the tract of land . . . to be his during his natural life, and at his death I give said land to his heirs, if any, to be theirs in fee simple forever; and if he should die without heirs, said land to revert back to his next of kin.' In a later case the following clause was construed: 'I leave Martha Morgan, wife of James Morgan, 48½ acres of land . . . during her life, then to her bodily heirs, if any; but if she have none, back to her brothers and sisters.' The Court said that Martha thereby acquired an estate for her natural life. *Puckett v. Morgan,* 158 N.C. 344. On this point the following cases of later date are equally conclusive: *Jones v. Whichard,* 163 N.C. 241; *Blackledge v. Simmons,* 180 N.C. 535; *Wallace v. Wallace,* 181 N.C. 158; *Reid v. Neal, supra; Welch v. Gibson,* 193 N.C. 684. The principle pervades all the recent decisions in which the question is discussed; and, indeed, so rigidly is it applied that a devise for life with power of disposition takes an estate, not in fee, but only for his natural life. *Chewning v. Mason,* 158 N.C. 578; *Roane v. Robinson,* 189 N.C. 628. It is obvious, therefore, that Bertie Hill was given only a life estate under the fifth item of the will."

In *Hampton v. Griggs,* 184 N.C. 13, 113 S.E. 501, the testator in Item 6 of his will gave "unto the lawful heirs of my son Nathaniel Pierce Hampton all of the lands and chattel property that belongs to me at the death of me and my wife, Nancy, and if my son should die without a bodily heir, then my property to go back into the Hampton family." The Court said: "Members of the Hampton family, of course, are potentially among the heirs general of the first taker, but they are not all, and this ulterior limitation would exclude others among his heirs who were not of the blood of the original stock." The rule in *Shelley's case* was held not applicable.

In *Williams v. Johnson,* 228 N.C. 732, 47 S.E. 2d 24, these were the material items of the will. In Item 3 the testator gave a life estate in said tract of land to Mrs. Odie Phillips, wife of Mat Phillips, who was testator's son, provided she remain a widow. In Item 4, after the death of the said Odie Phillips he devised to his grandchildren, to wit: the children of Mat Phillips, for and during the term of their natural lives the said land, and after the death of the said grandchildren, then to their bodily heirs, or issue surviving them, and in the event any of said grandchildren shall die, without leaving him surviving issue or issues, then to his next of kin in fee simple forever. In this case the Court said: "The term 'next of kin,' when used in a deed or will in connection with a limitation over upon the failure of issue, nothing else appearing to the contrary, means 'nearest of kin' or 'nearest blood relation,' and restricts its meaning to a limited class of nearest blood relations, to the exclusion of those enumerated as next of kin in the statute of distribution." Citing authorities. The Court held that the rule in *Shelley's case* did not apply.

*Stacy, C. J.,* speaking for the Court in *Welch v. Gibson,* 193 N.C. 684, at p. 691, 138 S.E. 25, says: "When there is an ulterior limitation which provides that upon the happening of a given contingency, the estate is to be taken out of the first lines of descent and then put back into the same line, in a restricted manner, by giving it to some, but not to all, of those who presumptively would have shared in the estate as being potentially among the heirs general of the first taker, this circumstance may be used as one of the guides in ascertaining the paramount intention of the testator, and, with other *indicia,* it has been held sufficient to show that the words 'heirs' or 'heirs of the body' were not used in their technical sense." The *Chief Justice* then goes on to state that herein lies the distinction between *Rollins v. Keel,* 115 N.C. 68, 20 S.E. 209; *Puckett v. Morgan,* 158 N.C. 344, 74 S.E. 15; *Jones v. Whichard,* 163 N.C. 241, 79 S.E. 503; *Pugh v. Allen,* 179 N.C. 307, 102 S.E. 394; *Blackledge v. Simmons,* 180 N.C. 535, 105 S.E. 202; *Wallace v. Wallace,* 181 N.C. 158, 106 S.E. 501; *Reid v. Neal,* 182 N.C. 192, 108 S.E. 769, and *Hampton v. Griggs, supra,* and *Benton v. Baucom,* 192 N.C. 630, 135 S.E. 629.

In *Tynch v. Briggs,* 230 N.C. 603, 54 S.E. 2d 918, the testator devised to his wife S., all the remainder of his real estate for the term of her natural life and after her death to his son J., for the period of his natural life, in remainder to his lawful heirs, and in the event the said J. should die without lawful heirs then in remainder to his daughter Sallie Ann for her life, and after her death to the heirs of her body lawfully begotten—and in the event of the death of the said Sallie Ann without heirs of her body lawfully begotten then said lands shall be exposed to public sale and the proceeds from the sale shall be equally divided among all his children then alive and the lawful heirs of any child that may be dead. The Court went on to say that our first concern is to determine who were meant by the testator as "lawful heirs" of J. as second takers, and that J. could not die without heirs in the general sense as long as Sallie Ann his sister lived. The Court said: "On a contextual reading we must regard the language employed in the devise not as referring to general heirs, but as *descriptio personarum,* and find it impossible to reconcile its use with the rule in *Shelley's case.* It does not apply. *Hampton v. Griggs, supra; Puckett v. Morgan, supra; Francks v. Whitaker,* 116 N.C. 518, 21 S.E. 175; *Rollins v. Keel,* 115 N.C. 68, 20 S.E. 209; *Bird v. Gilliam,* 121 N.C. 326, 28 S.E. 489; *Williamson v. Cox,* 218 N.C. 177, 10 S.E. 2d 662."

The defendants in their brief contend that *Whitfield v. Garris,* 131 N.C. 148, 42 S.E. 568 (petition to rehear denied in 134 N.C. 24, 45 S.E. 904); *Morrisett v. Stevens,* 136 N.C. 160, 48 S.E. 661; and *Sessoms v. Sessoms,* 144 N.C. 121, 56 S.E. 687, support their position. In *Jones v. Whichard,* 163 N.C. 241, 79 S.E. 503, the deed employed this language in substance: Witnesseth, that the said Major Jones in consideration of love and affection conveys unto his son, Robert M. Jones, his heirs and assigns, a tract of land, to have and to hold said land to him the said Robert M. Jones and his wife during their natural life, and then to their legal bodily heirs, provided they leave any, and if not, to be equally divided among his nearest of kin. This Court held the rule in *Shelley's case* did not apply. *Hoke, J.* (later *C.J.*), speaking for the Court, said: "The cases of *Morrisett v. Stevens,* 136 N.C. 160, and *Whitfield v. Garris,* 134 N.C. 24, and others cited by counsel, when properly understood, do not militate against this construction.

"In *Whitfield's case* and in *Morrisett's case* the ulterior disposition of the property was not and was not intended as a limitation on the estate conveyed to the first taker, but was a provision whereby one stock of inheritance on certain contingencies was substituted for another, the second to hold as purchasers direct from the grantor or original owner. *Sessoms v. Sessoms,* 144 N.C. 121."

The other cases cited in defendant's brief have been examined, and are distinguishable.

The case states that Euphenia Clayton has been dead many years, that when John S. Clayton died he had eight granddaughters and four grandsons living—one grandson born the day he died.

When the testator used these words "I give to My Grand Sound John W. Clayton the land (which he describes) to have and to hold his lifetime, thence to his Body ars if he has Eney and if not then *to* (we have changed *it* to read *to*—Italics ours) my Grand Sound Silus Daynel Clayton if he a living but if J. W. Clayton Shold hav a body hir it shall go to them down to the Tenth Jenerration," and when later on in his will he used these words "if Ether one of my grand-Sons Shold Die *and* (*any* has been changed to read *and*—Itaics ours) my grand Soun Stanley be living and thay Shold not leave a Body heir he Shal hav thair Share," it is obvious that John W. Clayton was given only a life estate under the will. The words of the will do not give the land to John W. Clayton absolutely with a provision that if he die without bodily heirs it shall go elsewhere, but give it to him "to have and to hold his life time, thence to his Body ars if he has Eney and if not then to my Grand Sound Silus Daynel Clayton, etc." Reading the will from its four corners, we think that it is clear and plain that John S. Clayton's intent and purpose when he used the words "thence to his (John W. Clayton's) Body ars if he (John W. Clayton) has Eney" and the words "but if J. W. Clayton Shold hav a body hir it shall go to them down to the Tenth Jenerration" and the words "if Ether one of my grand-Sons Shold Die and my grand Soun Stanley be living and thay Shold not leave a Body heir he Shal hav thair Share" was to use the words "Body ars," "body hir" and "Body heir" of John W. Clayton as *descriptio personarum,* and not to use the words in their strict and technical sense of heirs, for these words obviously mean that if John W. Clayton die without children, the land is to be taken out of the first lines of descent, and then put back into the same line in a restricted manner by giving the land first to Silas Daniel Clayton, and then if he dies without children by giving it to Stanley Clayton, when the testator had eight granddaughters and four grandsons living, when he died. Therefore, the rule in *Shelley's case* does not apply. *Whitson v. Barnett,* 237 N.C. 483, 75 S.E. 2d 391 (where numerous cases are cited); *Tynch v. Briggs, supra; Williams v. Johnson, supra; Welch v. Gibson, supra.*

The words in the will the land 'shal never be Sold for Eney pupus what Sover" are void. *Lee v. Oates,* 171 N.C. 717, 88 S.E. 889; *Williams v. Sealy,* 201 N.C. 372, 160 S.E. 452; *Williams v. McPherson,* 216 N.C. 565, 5 S.E. 2d 830. Provisions against alienation in a deed or will do not defeat the estate to which they are annexed. In such case the conveyance or devise stands and the invalid provision is rejected. *Lee v. Oates, supra.*

The words in the will the land "Shall go to them down to the Tenth Jenerration" are void, being within the rule against perpetuities. *Jackson v. Powell,* 225 N.C. 599, 35 S.E. 2d 892.

After stating that *Shelley's case* was decided in 1581 Dean Samuel F. Mordecai, one of the greatest and wittiest law teachers our State has had, says in his Law Lectures, Vol. One, p. 654: "We see gathered around the 'Rule in *Shelley's Case*' Coke, Blackstone, Mansfield, Fearne, Junius and Lord Campbell—all great names in the history of our law and literature—not to mention many other great legal luminaries whose participation in fixing and unfixing this 'settled' rule, which will not remain settled, I have not time to tell about."

It is interesting to read what two of our brethren have said about *Shelley's case*. *Stacy, C. J.*, in *Welch v. Gibson, supra,* says: "The origin of the rule (in *Shelley's case*) as well as the wisdom of its adoption, has been the subject of much curious and learned speculation. Though found among the remains of feudality, it is neither a relic of barbarism nor a part of the rubbish of the dark ages, but rather a Gothic column, as it were, which has been preserved to aid in sustaining the fabric of our modern social system." *Douglas, J.*, in *Stamper v. Stamper*, 121 N.C. 251, 28 S.E. 20, calls *Shelley's case* "the Don Quixote of the law, which, like the last knight-errant of chivalry, has long survived every cause that gave it birth and now wanders aimlessly through the reports, still vigorous, but equally useless and dangerous."

The judgment of the lower court is

Affirmed.